WADE S. COFFEY *v.* MARYLAND-NATIONAL
CAPITAL PARK AND PLANNING
COMMISSION

[No. 124, September Term, 1981.]

*Decided March 2, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Thomas A. Rymer* for appellant.

*Thurman H. Rhodes, Associate General Counsel,* with whom were *Arthur S. Drea, Jr., General Counsel,* and *Sanford E. Wool, Deputy General Counsel,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that in an area governed by Maryland Code (1957, 1978 Repl. Vol.) Art. 66D, when subdivision regulations require that a proposed subdivision comply with the master plan, an application for approval of a preliminary subdivision plan that fails to so comply must be rejected. Hence, we shall affirm the judgment of the Circuit Court for Prince George's County.

Appellant, Wade S. Coffey, owns 15.85 acres of land on Riverdale Road in Prince George's County, located approximately 1,800 feet east of that road's intersection with the Baltimore-Washington Parkway. The land is zoned R-T (Townhouse Development). This permits a maximum development density of 8.0 to 11.9 units per acre. The master plan for that area, approved in December 1980 by the District Council for Prince George's County, restricts density to 2.7 to 3.5 dwelling units per acre. Almost immediately after adoption of the plan, in January 1981, Coffey submitted an application for approval of a preliminary plan of subdivision. The planning for the subdivision had been in progress for some time. He proposed 117 townhouse units on the tract, a density of 7.38 dwelling units per acre.

Prince George's County Code § 24-103 (a) (1) requires subdivision plats to conform to the master plan. Relying upon our decision in *Board of County Comm'rs v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979), the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission (the Commission) rejected the proposed subdivision because of noncompliance with the master plan. The Circuit Court for Prince George's County affirmed. Coffey then appealed to the Court of Special Appeals. Because we have not previously addressed such an issue under Art. 66D, we issued the writ of certiorari ex mero motu prior to consideration of the appeal by the intermediate appellate court.

Coffey first argues the inapplicability of *Gaster,* pointing out that we began our discussion in that case by saying, "We granted the county's petition for the writ of certiorari prior to the hearing of this case by the Court of Special Appeals because of the importance of this issue in planning

matters involving non-charter counties in Maryland." 285 Md. at 238-39. Since we had before us no issue relative to charter counties, we simply were making plain the scope of our opinion. Because Cecil County is governed in zoning matters by Code (1957, 1978 Repl. Vol.) Art. 66B, while Prince George's County is governed by Art. 66D, *Gaster* obviously could not be applicable, although its logic is.

Coffey's argument runs that prior to *Gaster* planning boards regarded master plans as only a set of recommendations, that *Gaster* was the first case where noncompliance with a master plan caused rejection of a proposed subdivision, and that noncompliance with the master plan constituted insufficient grounds for disapproval of a proposed subdivision. Cases making statements relative to master plans being guides have arisen in the context of an attempted piecemeal change in zoning. For instance, in *Chapman v. Montgomery County,* 259 Md. 641, 643, 271 A.2d 156 (1970), Judge Finan said for the Court, "A 'Master Plan' is not to be confused as a substitute for a comprehensive zoning or rezoning map, nor may it be equated with it in legal significance." No opinion of this Court has made a statement relative to master plans acting only as guides in the context of the facts here involved.

At oral argument, counsel for the Commission said that its past practice had been to treat the master plan as a guide in zoning matters. Counsel further stated, however, that the Commission regarded the master plan as binding in subdivision matters subsequent to the enactment of the regulation requiring proposed subdivisions to conform to the master plan.

We closed our opinion in *Gaster* by saying:

"The county here has preordained by its subdivision regulations that one who seeks to cut up a larger tract by creating a subdivision must not disrupt the master plan and that the subdivision must be compatible with that master plan. Likewise, many zoning ordinances specify relative to special exceptions that they shall be granted only if they are

compatible with and will not disrupt the master plan.

"In sum, Cecil County has validly used the planning tools placed in its hands by the General Assembly to provide for orderly growth for the county." 285 Md. at 250.

We had earlier pointed out in *Gaster:*

"As we noted in *Wash. Co. Taxpayers Ass'n v. Board,* 269 Md. 454, 455-56, 306 A.2d 539 (1973), some confusion exists relative to the terms planning and zoning, which are not synonymous. Zoning is concerned with the use of property but planning is broader in its concept. 1 E. Yokley, *Zoning Law and Practice* § 1-2 (4th ed. 1978), comments:

Expressing the matter in another way, let us say that zoning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power. [*Id.* at 4.]

"There are three integral parts of adequate land planning, the master plan, zoning, and subdivision regulations. The need for subdivision regulations as a part of that planning is well illustrated by the case here. As it is put in 4 R. Anderson, *American Law of Zoning* § 23.03 (2d ed. 1977), '[Z]oning ordinances are not calculated to protect the community from the financial loss which may result from imperfect development. Some of these purposes are sought through the imposition of subdivision

controls.' *Id.* at 47. 4 A. Rathkopf, *The Law of Zoning and Planning* Ch. 71 § 2 (4th ed. 1979), gives reasons for subdivision control:

Planning enabling acts and the requirements for plat approval are based upon the realization that homes are no longer generally constructed one at a time for individual owners, resulting in a gradual development which can be controlled by zoning ordinances and local health, building, plumbing, and electrical codes alone. Vacant lots suitable for single homes in already developed communities have all but disappeared. The great increases in population and the unprecedented demand for homes has necessarily resulted in opening up undeveloped land in outlying areas, and the development thereof by large numbers of homes which may be said to be built all at one time. Where such development takes place without restriction other than zoning restrictions, it is the developer who designs the community in respect to the number, length, width, condition, and location of streets. The developer also determines where the newly arrived inhabitants of the community shall reside, without consideration of the necessity for, or existence of, schools, fire protection, parks, playgrounds, and other public facilities. If subdivisions develop too rapidly, or before the community is ready for the added burdens which an increased population imposes, and without adequate control, the result too often is the creation of deteriorating neighborhoods which create a blight upon the community and a drain upon the municipal purse. [*Id.* at 71-6 — 7.]

*See also* 82 Am. Jur. 2d, *Zoning and Planning* § 163 (1976)." 285 Md. at 246-47.

Although the provisions of Code (1957, 1978 Repl. Vol.,

1980 Cum. Supp.) Article 66D, § 7-108 relative to master plans in Montgomery and Prince George's Counties, and Code (1957, 1978 Repl. Vol.) Art. 66B, § 3.05 concerning master plans in noncharter counties such as that before the Court in *Gaster* are by no means identical, their requirements as to the content of the master plan nonetheless are similar. In both instances the master plan must have the approval of the local legislative body, which would be the County Council of Prince George's County in this case, and, for this purpose, the board of county commissioners in noncharter counties.

Furthermore, both Art. 66B and Art. 66D provide for subdivision regulations. Article 66D, § 7-115 provides that no plat of any subdivision of land within the regional district in Prince George's County shall be recorded among the land records without the approval of the Commission, with exceptions not here relevant. Section 7-116 grants to the Commission and the governing bodies of Montgomery and Prince George's Counties the power to "prepare regulations and amendments governing the subdivision of land within the regional district or the respective portions of the regional district within Montgomery or Prince George's County." A number of items which the regulations may cover are specified, including "(7) the avoidance of population congestion; (8) the avoidance of scattered or premature subdivision of land as would involve danger or injury to health, safety or welfare by reason of the lack of water supply, drainage, transportation or other public services or necessitate an excessive expenditure of public funds for the supply of services; [and] (9) conformity of resubdivided lots to the character of lots within the existing subdivision with respect to area, frontage, and alignment to existing lots and streets . . . ." Compare Art. 66B, § 5.03. The subdivision regulations in this case have been duly adopted by the County Council.

As the author points out in 4 R. Anderson, *American Law of Zoning 2d* § 23.20, at 89 (1977), "Subdivision controls are imposed for the purpose of implementing a comprehensive plan for community development. To achieve this end, plats submitted to a planning commission for approval must be

examined in relation to the official map and the master plan." Moreover, as the court observed in *Popular Refreshments, Inc. v. Fuller's Milk Bar, etc.,* 85 N.J. Super. 528, 537, 205 A.2d 445 (1964), *petition for certification denied,* 44 N.J. 409, 209 A.2d 143 (1965), "If planning boards had no alternative but to rubber-stamp their approval on every subdivision plat which conformed with the zoning ordinance, there would be little or no reason for their existence. While planning and zoning complement each other and serve certain common objectives, each represents a separate municipal function and neither is a mere rubber-stamp for the other," citing *Levin v. Livingston Tp.,* 35 N.J. 500, 506, 173 A.2d 391 (1961).

In this regard, the language used by the court in *Shoptaugh v. County Comm.,* 37 Colo. App. 39, 543 P.2d 524 (1975), *cert. denied,* Colo. (1976), is significant here. The court there said:

> "Here, the landowner argues that since the proposed use of the land was a use of right under the zoning laws, the Board had no alternative but to either change the zoning or approve the plat. This argument fails to take into consideration that a subdivider must first meet the zoning regulations and then additionally must comply with the state and county subdivision regulations." 37 Colo. App. at 41-42.

The process of comprehensive zoning or rezoning is a time consuming one. It would be virtually impossible to adopt comprehensive rezoning changes calculated to impose the same density requirements as the master plan which would become effective simultaneously with the adoption of a new master plan that called for lower density development than the preceding plan.

Here we have a regulation duly enacted by the legislative body for Prince George's County which specifies that the planning board shall not approve a subdivision plat not in compliance with the master plan. This subdivision regulation is as much entitled to obedience as any other legisla-

tive enactment. The need for the regulation specifying that a subdivision plan must conform to the master plan can be illustrated by comparison to the putting of water in a teacup drop by drop. After a period of time there comes the drop which will cause the cup to overflow. By analogy, developing some of the lots in conformity with the existing zoning will not disrupt the master plan. Concentrated use and development, however, will disrupt it. The legislative body wished to avoid this when it specified that subdivisions must comply with the master plan. Accordingly, the Commission was justified in rejecting Coffey's proposed subdivision for his failure to conform that proposal with the master plan.

*Judgment affirmed; appellant to pay the costs.*