506 A.2d 675

**BOYDS CIVIC ASSOCIATION, et al.**

**v.**

**MONTGOMERY COUNTY COUNCIL, et al.**

**No. 909, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 4, 1986.

Certiorari Granted June 27, 1986.

John F. McCabe, Jr., Rockville (William J. Chen, Jr., Rockville, Allan A. Noble and Budow & Noble, P.C., Bethesda, on brief), for appellants.

Alan M. Wright, Senior Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., on brief), Rockville, for appellee, Montgomery County Council.

Kathleen Sheehy (Charles G. Dalrymple and Linowes and Blocher, on brief), Silver Spring, for appellee, Rockville Crushed Stone, Inc.

Jane E. Allan, Associate Gen. Counsel and Arthur S. Drea, Jr., Gen. Counsel on brief, for appellee, Maryland-National Capital Park and Planning Com'n.

Argued before GARRITY, ALPERT and WENNER, JJ.

ALPERT, Judge.

The single issue in this appeal, from a refusal of declaratory judgment, is whether there was a justiciable controversy pending before the trial court. Necessary to that determination is the decision whether the adoption of a master plan by the local planning commission confers any rights, the violation of which may make it subject to appeal. This case comes before us as an appeal from the granting of Motions to Dismiss a complaint seeking declaratory judgment and injunctive relief. Therefore, in reviewing the evidence below, we are required to assume the truth of all material facts that are well pleaded, as well as all inferences which can reasonably be drawn from those well-pleaded facts. *See Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984); *Hooke v. Equitable Credit Corp.*, 42 Md.App. 610, 402 Md.App. 610 (1979). With this in mind, we set forth the following pertinent facts, which form the basis of this appeal.

Boyds Civic Association ("Association" or "appellant") is an unincorporated civic association whose members reside in and around the unincorporated town of Boyds, Maryland, a rural community in the northern section of Montgomery County, Maryland. The Boyds community consists of approximately 3,085 acres of land, and it is the subject of a master plan known as the "Master Plan for the Boyds Community, Montgomery County" that was duly approved and adopted in 1978 (the "Boyds Master Plan"). The persons who instituted the action below, on behalf of the Association, own property and reside in the Boyds community. Their properties are within sight and sound of a 530 acre tract of land owned by Rockville Crushed Stone ("RCS"), which is also located in the area comprising the Boyds Master Plan.

RCS is interested in operating a quarry on the 530 acre tract (the "RCS tract"). Under the Boyds Master Plan, the RCS tract is classified in three rural and residential zones, none of which permits operation of a quarry. In order to proceed with its plans to operate a quarry, RCS must first

have the RCS tract rezoned as a Mineral Resource Recovery Zone (the "MRR Zone"), within which zone quarries are designated as permitted uses. *See* Mont. County Code § 59–C–12. The MRR Zone is a "floating zone" and can be established only after the property owner has applied for the zone; property cannot be rezoned MRR by government initiative. *See Wheaton Moose Lodge v. Montgomery County*, 41 Md.App. 401, 397 A.2d 250 (1979).

A precondition to property being rezoned MRR in Montgomery County is that the applicable master plan must designate that use as appropriate for that particular property. Mont. County Code § 59–C–12.2. Because the Boyds Master Plan did not designate the RCS tract as suitable for a MRR Zone, the Boyds Master Plan would first have to be amended accordingly.

At this juncture, it would be helpful to outline briefly the planning process in Montgomery County. The general powers of planning and zoning in that county have been relegated to the Montgomery County Council, acting as the District Council, Md.Ann.Code Art. 28, § 8–101(a) (1983 Repl.Vol.), and the Maryland-National Capital Park and Planning Commission (the "Commission"). *Id.*, § 7–108; Mont. County Code, ch. 33A (1984). This includes responsibility for the initiation, preparation, approval and adoption of master plans and amendments thereto. In the execution of these tasks, the Commission and District Council must adhere to certain procedural requirements, set forth in chapter 33A of the Montgomery County Code, which in pertinent part provides:

Sec. 33A–5. *Preliminary draft—Preparation*

. . . .

The commission shall prepare a preliminary draft of a plan.

. . . . .

Sec. 33A–6. *Same—Public Hearing.*

The commission shall conduct a public hearing on the preliminary draft of a plan. The public hearing may be

conducted in the area affected by the plan, if practicable. Notice of the hearing shall be given not less than thirty (30) nor more than sixty (60) days prior to the date of the hearing by publication at least once in a newspaper of general circulation in Montgomery County. In addition, the commission shall mail notices to all citizens' associations which the records of the commission show to be located within or adjacent to the planning area. The notice of the hearing shall specify the time and place of the hearing, the area of the county affected, and the subject matter of the hearing.

Sec. 33A–7. *Final draft.*

(a) Following the close of the record of the public hearing, the commission shall prepare and submit to the district council, to the county executive, and to any municipality in or adjacent to the planning area, a final draft of the plan incorporating appropriate revisions and modifications to the preliminary draft.

.        .        .        .        .

(b) Within ninety (90) days following receipt of the final draft of the plan from the commission, the district council shall either:

(i) Approve or disapprove the final draft as submitted by the commission; or

(ii) Conduct a public hearing on the final draft. A public hearing shall be required whenever the district council proposes any revisions, modifications or amendments to the final draft as submitted by the commission. The public hearing may be conducted in the area affected by the plan, if practicable. Notice of the hearing shall be given not less than thirty (30) nor more than sixty (60) days prior to the date of the hearing by publication at least once in a newspaper of general circulation in Montgomery County. In addition, notices shall be mailed to all citizens' associations which received notice of the commission's public hearing. The notice of the hearing shall specify the time and place of the hearing, the area of the county affected, and the subject matter of the hearing.

Within thirty (30) days of the close of the hearing record, the district council shall approve or disapprove the final draft either as submitted by the commission or with such revisions, modifications or amendments as may be approved by a majority of the district council; provided, however, that the council, by resolution, may extend the time for action on the final draft to a date certain, if such additional time is deemed necessary by the council.

(c) For the purpose of this chapter, the failure of the district council to act within the time periods established by this section shall constitute approval of the final draft of the plan.

Sec. 33A–8.  *Adoption of plan.*

Within thirty (30) days following approval by the district council of the final draft of a plan, the final draft shall be adopted by the commission in the form approved by the council.

In addition, § 33A–4 provides that these procedures are equally applicable to the initiation, preparation, approval and adoption of amendments to master plans.

In furtherance of its efforts to have its property rezoned to the MRR zone, RCS in 1981 requested that the Commission, through its Montgomery County Planning Board ("Planning Board"),[1] propose an amendment to the Boyds Master Plan to include, *inter alia,* a recommendation in the amended master plan that the RCS property was suitable for the MRR zone.  The process commenced in February 1982 with the preparation, by the Staff of the Planning Board, of a "Staff Draft Amendment."  Subsequently, proceedings were conducted before the Planning Board, including *numerous* work sessions and a public hearing, which was held on May 27 and June 2, 1982.  In response to the

---

**1.** The Planning Board is part of the Commission.  It is responsible for planning, platting and zoning functions primarily local in scope, as distinguished from the regional planning functions of the Commission.  Md.Ann.Code Art. 28, § 7–111(a).

public hearings and work sessions, the Planning Board prepared a "Final Draft Boyds Master Plan" (the "Final Draft") in January 1983 and submitted the same to the District Council in March 1983 for consideration as an amendment to the Boyds Master Plan.

Unfortunately for RCS, the Final Draft as submitted to the District Council did not designate the RCS property as appropriate for the MRR Zone. Four of the five members of the Planning Board approved of the language of this draft. Of particular concern to the Planning Board was the potential adverse impact upon the surrounding community which might result from the hauling of stone by truck from the Boyds area. This was a primary reason why the Final Draft did not reflect the MRR Zone recommendation.

The District Council held public hearings on the Final Draft on June 14 and June 16, 1983. Thereafter, a District Council subcommittee, the Planning, Housing and Economic Development Committee, conducted work sessions on June 28 and July 12, 1983. The District Council then conducted further work sessions commencing on July 26, 1983. On September 28, 1983 by letter and on October 4, 1983 at a work session, RCS advised the District Council that one hundred percent rail haul of stone from the proposed quarry was feasible and truck haul would not be necessary. As a result of this new information, on March 5, 1984, two members of the Planning Board who previously voted with the majority on the language of the Final Draft, advised the District Council that they now supported the designation of the RCS property as suitable for the MRR Zone. The Commission took no official action to change its Final Draft, but it did (allegedly) participate actively in amending the Final Draft during the next several months.

The Council conducted three further hearings on March 13, March 27, and July 24, 1984. At the March 27 work session, there was pending before the District Council a resolution to amend the Final Draft to designate the MRR Zone as suitable for the RCS property. The District Council did not adopt this resolution, but adopted instead a motion

to table the resolution and directed the Planning Board staff to redraft the Final Draft and the resolution in accordance with the guidance provided by the Council—still disallowing a quarry on the RCS property.

At its next work session, on July 24, 1984, the District Council reopened its deliberations, changed its mind, and adopted Resolution No. 10–864, which provided that the Boyds Master Plan would designate the RCS property as an area suitable for the MRR Zone. The resolution also enumerated in detail the specific conditions under which a local zoning map amendment for rezoning the RCS property to the MRR Zone would be granted. In January 1985 the language implementing Resolution No. 10–864 was approved by the District Council in the form of a revision to the Final Draft. This language was adopted by the Commission in February, 1985 (the "1985 Amendment").

In December, 1984, just prior to the approval and adoption of the 1985 Amendment, RCS revised its Zoning Application No. G–316 (the "RCS Application") in an effort to conform the development plan contained in the application [2] to the conditions enumerated in the July 24 resolution, *supra.* On March 29, 1985, the Hearing Examiner for Montgomery County commenced hearings on the RCS Application, which requests rezoning of the RCS property to the MRR Zone. The RCS Application has not yet been acted upon by the District Council.

On March 12, 1985, appellants filed a two-count complaint in the Circuit Court for Montgomery County. The first count sought a declaratory judgment that the approval and

---

2. Mont.County Code § 59–C–12.1 (MRR Zones) provides, in pertinent part:

    In order to enable the council to consider whether an application satisfies the purposes, requirements and objectives established herein, a development plan filed pursuant to section 59–D–1 is required for each requested mineral resource protection and development area. The district council and the planning board may approve such plans is development in accordance with such plans is determined to satisfy the purposes of the mineral resource recovery zone and in compliance with the standards and regulations of the zone.

adoption of the 1985 Amendment to the Boyds Master Plan was illegal, unlawful, invalid and unconstitutional. This claim was premised on the alleged failure of the Commission and the District Council to adhere to the notice and hearing requirements of the governing state and local statutes, thereby violating their rights of due process of law. The second count sought an injunction requiring the District Council and the Commission to hold new hearings on the 1985 Amendment and enjoining any further proceedings on Zoning Application G–316, a separate and distinct proceeding from the approval and adoption of the 1985 Amendment.

Each of the defendants in the case below filed a Motion to Dismiss the Complaint.[3] The basis of the Motions filed by Montgomery County and the Commission was that the court lacked subject matter jurisdiction to decide the case because appellants' challenge to the 1985 Amendment did not rise to the level of a "justiciable controversy." The circuit court (Mitchell, J.), by order entered on June 24, 1985, granted the Motions to Dismiss. Appellants filed an Order for Appeal on July 18, 1985.

Appellants sought relief under the Maryland Uniform Declaratory Judgments Act, Maryland Cts. & Jud.Proc. Code Ann. § 3–401 *et. seq.* (1984 Repl.Vol.). This Act requires that declaratory judgments be granted only if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

---

**3.** The original defendants were the Montgomery County Council and the Maryland-National Capital Park and Planning Commission. Rockville Crushed Stone, Inc. successfully intervened as a party defendant and all three parties entered Motions to Dismiss.

*Id.,* § 3–409. It is well settled in Maryland that, in order to maintain a declaratory judgment action, there must be a "justiciable controversy." *Hamilton v. McAuliffe,* 277 Md. 336, 353 A.2d 634 (1976). According to the Court of Appeals, "[a] controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." *Id.* at 340, 353 A.2d 634. Addressing non-justiciable issues "would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." *Hatt v. Anderson,* 297 Md. 42, 46, 464 A.2d 1076 (1983); *Anne Arundel County v. Ebersberger,* 62 Md.App. 360, 368, 489 A.2d 96 (1985).

Recently, in *Ebersberger, supra,* this court held that a trial court should not have entertained a declaratory judgment action when there was no justiciable controversy. In that case, the plaintiffs had filed suit challenging the legality of a county ordinance that authorized a community association to borrow money for renovation of a swimming pool. Placing particular emphasis on the fact that "the ordinance does not *require* the district to renovate the pool; it merely *authorizes* such work[,]" 62 Md.App. at 371, 489 A.2d 96. (emphasis in original), Judge Wilner, writing for this court, stated in pertinent part:

> At least until the prospect of such an appropriation or such a tax becomes substantially more certain, the plaintiffs will have suffered no injury from the challenged ordinance, and its validity or invalidity is therefore of no practical consequence. This is particularly so in light of the basis for the circuit court's ruling, namely, that "the pool was not a part of the development of a comprehensive recreational program." Whether that would remain true at such time as the district might effectively choose to renovate the pool is anyone's guess.

*Id.*

In the instant case appellees contend that, as in *Ebersberger,* appellants have suffered no injury from the challenged

adoption of the 1985 Amendment by the Commission. This is so, they assert, because the adoption of that Amendment *authorizes* but does not *require* the District Council to approve an amendment to the zoning map. Appellees draw support from a plethora of recent decisions by this court and the Court of Appeals emphasizing the distinction between the adoption of a master plan and rezoning. The oft-cited case of *Chapman v. Montgomery County*, 259 Md. 641, 271 A.2d 156 (1970), is particularly apposite here as both cases involve Montgomery County planning and zoning ordinances. Writing for the Court of Appeals in *Chapman*, Judge Finan pointed out that:

> A "Master Plan" is not to be confused as a substitute for a comprehensive zoning or rezoning map, nor may it be equated with it in legal significance.... The zoning as recommended or proposed in the Master Plan may well become incorporated in a comprehensive zoning map ... but this will not be so until it is officially adopted and designated as such by the District Council.

*Id.* at 643, 271 A.2d 156. In *Chapman*, the court reviewed a hearing examiner's report which had formed the basis for the District Council's approval of appellee's application to rezone certain property to permit commercial development. The court took issue with the hearing examiner's apparent reliance on the fact that the applicable master plan recommended a commercial center for the subject property. Responding to the appellee's statement that "the Master Plan ... adopted ... and approved by the District Council ... is the presently existing comprehensive plan for the area," the appellate court said: "If, by this statement, the appellees are intending to convey the idea that the Master Plan for this area *is also the existing zoning map*, they are over-reaching." *Id.* at 643, 271 A.2d 156 (emphasis added).

Appellants in the instant case recognize these pronouncements in *Chapman*, but nevertheless assert that

> The February 1985 Master Plan Amendment to the 1978 Boyds Master Plan was the *sine qua non* to holding public hearings and to hearing Zoning Application G–316,

which had been filed and pending before the District Council since May 22, 1981.

Appellants' apparent unwillingness to be bound by the pronouncements in Chapman stems from their overbroad reading of two Court of Appeals cases decided after *Chapman.* In *Board of County Commissioners v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979), the Court considered whether a county planning commission "might properly disapprove establishment of a proposed subdivision which met all zoning requirements but failed to comply with the master plan, also adopted by the county's legislative body." *Id.* at 235, 401 A.2d 666. The court held that the planning commission was within its discretion in denying the subdivision application. A similar holding was reached in *Coffey v. Maryland-National Capital Park and Planning Commission,* 293 Md. 24, 441 A.2d 1041 (1982), where the court was again faced with the local planning commission's rejection of a proposed subdivision because of non-compliance with the applicable master plan.

The narrow holdings in *Gaster* and *Coffey,* that a subdivision or zoning application *may* be denied if not in compliance with the master plan, do not support appellants' apparent contention that a land use which is *contemplated* or *recommended* by a master plan *requires* approval of any zoning application that complies with it. That this is clearly not the rule in Maryland is evident from this court's opinion in *Cardon Investments v. Town of New Market,* 55 Md. 573, 466 A.2d 50 (1983), *aff'd,* 302 Md. 77, 485 A.2d 678 (1984).

The appellant in *Cardon Investments* had appealed a trial court's decision that reversed an earlier approval of rezoning. Had the rezoning been affirmed, the appellant could have built and operated a truckstop. On appeal to this court, the appellant contended that, because "the [applicable] land use plan proposed a highway service designation of the site, the Commissioners could rezone it H.S. [consistent with the plan] without having to show a change in the neighborhood." We responded by noting that the appellant

failed to appreciate the distinction between *planning* and *zoning,* and observed, as did the trial court, that although the planning reports designated those areas where the H.S. classification could be imposed, the subject property was not chosen for that authorized classification. *See* 55 Md. App. at 594–95, 466 A.2d 504.

█ Simply stated, the essential distinction between a master plan and comprehensive zoning is that the former merely recommends area development and *proposes* future land use and zoning classifications, while the latter determines *presently permitted* uses for property. *See JMC Construction Corp., Inc. v. Montgomery County,* 54 Md. App. 1, 456 A.2d 931 (1983) (citing *Howard County v. Dorsey,* 292 Md. 351, 438 A.2d 1339 (1982)). Although cases such as *Gaster* and *Coffey* indicate the master plan phase is becoming a more essential step in the zoning process, *see* 1 N. Williams, *American Land Planning Law* § 26.12 (1974) and S. Abrams, *Guide to Maryland Zoning Decisions* §§ 5.1–2 (2d ed. 1984), Maryland's view of master plans still mirrors those of the majority of other states— that it is advisory only. *See generally* 3 R. Anderson, *American Law of Zoning,* § 21.15 (2d ed. 1974); 2 Rathkopf, *The Law of Zoning and Planning* § 30.02 (4th ed. 1985); 5 P. Rohan, *Zoning and Land Use Controls* § 37.01[1][c] (1986). An example is found in *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 376 A.2d 483 (1977), where the Court of Appeals, in pertinent part, stated at 704:

> [There is no] requirement, *absent a statute,* that the map amendment must adhere to the recommendations of the General or Master Plan. Such land use planning documents represent only a basic scheme generally outlining planning and zoning objectives in an extensive area, and are in no sense a final plan; they are continually subject to modification in the light of actual land use development and serve as a guide rather than a straitjacket.

(Emphasis added). Thus, *Woodward & Lothrop* provides an exception to the general rule: where a statute requires the zoning classifications be in accordance with a master plan, the plan is more than a mere guideline, it is an express condition.

At first blush, this exception buoys appellants' cause as § 59–C–12.2 of the Montgomery County Code provides that "[t]he mineral resource recovery zone is applicable *only* where indicated as appropriate on an approved and adopted master plan...." (Emphasis added). Further examination of the MRR statute, however, reveals that the master plan, while a necessary condition, still does not *require* a designated parcel to be rezoned MRR. Section 59–C–12.1 expressly states that:

> The fact that an application for the mineral resource recovery zone complies with all specific requirements and purposes set forth herein shall not be deemed to create a presumption that the resulting use and development would be compatible with surrounding land uses and, in itself, *shall not be sufficient to require granting of the application.*

(Emphasis added).

■ Because the 1985 Amendment to the master plan merely *authorizes* but does not require the District Council to rezone the property with the MRR classification, it did not bestow upon RCS any right to use the property in a way that would affect the rights of the appellant. *Compare Anne Arundel County v. Ebersberger, supra. See also Hale v. Hale,* 66 Md.App. 228, 503 A.2d 271 (1986). On the date appellant filed his complaint, the situation clearly was one where the court was being asked to decide future rights in anticipation of an event—the rezoning to MRR—which might never take place. Accordingly, we hold that the trial court correctly determined there to be no justiciable controversy. *See Ebersberger, supra. See also Tanner v. McKeldin,* 202 Md. 569, 97 A.2d 449 (1953).

■ A question raised at oral argument, and one which in view of our holding needs to be addressed, is how are the procedural requirements of chapter 33A, which govern the master plan phase in Montgomery County, to be enforced if their alleged violations [1] do not present a justiciable controversy? If the violations at the planning stage can be attacked at a subsequent hearing on a zoning application, appellants may then realize "their day in court."

Although we are unable to find any judicial or legislative pronouncement in any jurisdiction that *expressly* authorizes a person to attack the validity of a master plan amendment at a zoning hearing, we believe such authority is implicit in the zoning provisions of the state and county codes.

■ If an application is filed with the District Council to amend the zoning map, a hearing must take place in which any person or association who may be aggrieved by the amendment shall have the opportunity to dissuade the Council from approving the application. *See* Montgomery County Code § 59–H–6.5. If the zoning amendment is contingent upon a valid master plan amendment, it is at the zoning hearing that the validity of the master plan amendment ought to be raised. Provisions of both the Maryland and Montgomery County codes provide that a master plan remains effective until legally superseded or amended.[5] In

---

4. There is no question that rules and regulations established by a governmental body must be honored by both the public and the governing body who promulgates them; they "cannot be waived, suspended, or disregarded as long as [they] remain in force." *Maryland-National Capital Park and Planning Comm. v. Friendship Heights,* 57 Md.App. 69, 80, 468 A.2d 1353 (1984); *Hopkins v. Md. Inmate Grievance Comm.,* 40 Md.App. 329, 391 A.2d 1213 (1978). *See U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *United States v. Heffner,* 420 F.2d 809 (4th Cir.1970).

5. Maryland Ann. Code Art. 28, § 7–108(d)(2), in pertinent part, provides that in Montgomery County,

The district council shall establish ... procedures for the submission, adoption, approval, and amendment of any plan or part thereof by the Commission.... Any plans heretofore adopted shall remain in effect according to present provisions *unless or until*

the event that the District Council approves an application over objection, interested parties who appeared at the hearing have several opportunities to appeal the council's decision. *See* Md.Ann. Code Art. 28, § 8–105(a) (appeal to circuit court) and (b) (appeal to the Court of Special Appeals). \

We are cognizant of the fact that, although the Hearing Examiner for Montgomery County has commenced hearings on the RCS Application, that application has not yet been acted upon by the District Council. Accordingly, we shall not comment on, nor is anything in this decision to be interpreted as an opinion of, the validity of the 1985 Amendment. We merely point to the availability of a more appropriate forum for appellants to voice their objections and assert their rights.

In view of our holding that no legal rights of the parties were affected by the adoption of the 1985 Amendments, we need not address appellants' claim for damages under 42 U.S.C. § 1983, as that section provides relief only to deprivation of *rights*. *See Lamar v. Steele*, 698 F.2d 1286 (5th Cir.1983), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 ("A section 1983 claim only accrues when the threats or threatened conduct result in a constitutional deprivation."); *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir.1980) (same); *Macko v. Byron*, 576 F.Supp. 875, 880 (N.D.Ohio, E.D.1983), *aff'd per curiam*, 760 F.2d 95 (6th Cir.1985) (Section 1983 requires an actual infringement of a constitutional right; a mere threat to infringe such right is not actionable).

---

*amended or superseded pursuant to procedures established under the provisions of this article.*
(Emphasis added). This language is substantially restated in Section 33A–11 of the Montgomery County Code, which provides that:
Any plans or amendments to plans which were duly adopted as of the effective date of this chapter shall remain effective unless and until superseded or amended in accordance with the provisions of this chapter.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-PELLANTS.