LISS et al. *v.* GOODMAN et al., CONSTITUTING
THE BOARD OF ESTIMATES OF
BALTIMORE CITY

[No. 259, September Term, 1960.]

174

*Decided, per curiam, December 9, 1960.*
*Opinion filed January 17, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Solomon Liss* for the appellants.

*Harrison L. Winter, City Solicitor,* and *Morton L. Goldner,
Assistant City Solicitor,* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellants, members of the City Council of Baltimore,
filed a petition for declaratory judgment praying the court to
answer certain questions as to the relative powers of the
Board of Estimates and the City Council in budgetary matters.
The Board of Estimates, through the City Solicitor, filed a
demurrer, which was overruled, and an answer. The facts
were stipulated. From an order making certain declarations
contrary to their contentions, the petitioners appealed here.
We advanced the case for argument and at the request of all
parties passed a per curiam order determining the issues pre-
sented. We affirmed the order appealed from, after deleting
the parenthetical clause at the end of the second paragraph of
the order in the interest of clarity. We now state the reasons
for our action.

The appellees raise a procedural question as to the jurisdic-
tion of the court below to enter a declaratory decree. Code
(1957), Art. 31A, sec. 6 provides, in part, that "[r]elief by
declaratory judgment or decree may be granted in all civil
cases in which an actual controversy exists between contend-
ing parties, or in which the court is satisfied that antagonistic
claims are present between the parties involved which indicate
imminent and inevitable litigation, or when in any such case
the court is satisfied that a party asserts a legal relation, status,

right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree shall serve to terminate the uncertainty or controversy giving rise to the proceedings." The appellees contend that there is no "actual controversy" between the parties, that there is no indication of "imminent and inevitable litigation", and that the petitioners have no "concrete interest" in the rights or privileges they assert.

In order to understand these contentions it is necessary to advert to the facts. Section 30 of the Charter and Public Local Laws of Baltimore City (1949 ed.) provides for the preparation and enactment of the annual budget for Baltimore City, known as the Ordinance of Estimates. Under Section 170 of the Charter, the City's fiscal year is the calendar year. Under Section 30 the Board of Estimates is directed to prepare certain lists of appropriations between October 1 and November 1 of each year, to combine them in a proposed ordinance, and to certify them and cause them to be published and, thereafter, transmitted to the City Council, convened in special session. Said Section makes it the duty of the City Council to hold daily sessions until the ordinance is passed. While the Section authorizes the City Council to reduce the amounts of the items of appropriations fixed by the Board, except items fixed by law and items necessary to service the public debt, it expressly prohibits the City Council from exercising the power to increase the amounts fixed by the Board or to insert new items of appropriation in the ordinance. Chafing under the restrictions imposed by this form of executive budget, the members of the City Council have repeatedly in past years sought means whereby they might bring pressure upon the Board to supplement or amend the ordinance after it had been submitted to them.

In December, 1959, upon request of a group of councilmen, the present City Solicitor, relying upon earlier rulings of former City Solicitors, ruled that the City Council could not reject the ordinance, or return it to the Board of Estimates after it had been submitted to the Council and that the Board

of Estimates could not recall the ordinance and supplement or amend it. By resolution passed by unanimous vote on January 18, 1960, the City Council resolved that the "members of this body, recognizing the existence of the said question and its perennial recurrence, * * * agree that a declaratory judgment be sought * * *." Suit was duly filed, and the order appealed from was passed on November 9, 1960. At that time and indeed at the time of the argument in this Court on December 8, 1960, the ordinance had not been submitted to the Council.

It seems clear that the question presented, involving as it does the respective powers of two branches or agencies of the City government, is of some public concern. Under Section 15 of the Charter the City Council is the legislative department of the City government while under Section 30 the Board of Estimates is the number 1 executive department or board, consisting of the Mayor, City Solicitor, Comptroller, President of the City Council and Director of Public Works. It can hardly be doubted that each of these bodies has a legitimate interest in determining the extent of their respective powers. We think that interest is sufficiently "concrete". It is true that at the time the declaration was sought and made, it was not certain that the ordinance, when submitted, would be rejected or returned by the Council, even if it had the power to do so. But the power is claimed, and in the light of the past history we think it is a fair assumption that the power would be exercised, if found to exist. Certainly it cannot be assumed that the Council's resolution was frivolous or not adopted in good faith.

This Court has stated that the declaratory procedure should not be used to decide purely theoretical questions or questions that may never arise. See *Tanner v. McKeldin*, 202 Md. 569, and *Kirkwood v. Provident Savings Bank of Baltimore*, 205 Md. 48. We have also stated that declarations should not be made where they would not serve a useful purpose or terminate a controversy. Cf. *Staley v. Safe Deposit & Trust Co. of Baltimore*, 189 Md. 447, and *Commissioners of Cambridge v. Eastern, etc., Co.*, 192 Md. 333. We think the question here is not theoretical but practical. The Council has asserted a right

to reject or return the ordinance when submitted. To do so in the closing days of the year without a prior adjudication might well cause an impasse and seriously affect the City's financial needs and obligations. It would seem to be peculiarly appropriate to have the issue resolved in advance. Other courts have indicated that declaratory relief is appropriate where public agencies are at loggerheads. See *Marshall County Gas District v. City of Albertville*, 83 So. 2d 299 (Ala.); *Personnel Board of Mobile County v. City of Mobile*, 84 So. 2d 365 (Ala.); *Alsop v. Pierce*, 19 So. 2d 799 (Fla.); *Cummings v. Beeler*, 223 S. W. 2d 913 (Tenn.); *Hubbard v. Board of Trustees of Retirement System*, 23 N. W. 2d 186 (Mich.). See also *Borchard, Declaratory Judgments* (2d ed.), p. 889. The declaration in the instant case terminates any uncertainty caused by the assertion of its alleged rights or privileges by the Council and serves the remedial purposes set forth in Code (1957), Art. 31A, sec. 12.

The appellants argue that the appropriation of public funds is a legislative function and that any restriction upon the powers of the Council as a legislative body should be strictly construed; Section 30 does not expressly deny the rights or privileges claimed and resort should not be had to implication. The power to approve implies the power to disapprove, as pointed out in *County Council of Balto. County v. Egerton Realty, Inc.*, 217 Md. 234, 239. We think the argument cannot prevail.

It is true that the legislative power is generally lodged in the City Council, but with express limitations. It may not increase the amounts fixed by the Board, nor may it insert new items in the proposed ordinance. A rejection or return of the Ordinance after submission could serve no other purpose than to induce an upward revision by the Board in particulars beyond the power of the Council. There is force in the appellees' contention that this is an attempt to do by indirection what the Council may not do directly. The Council's power to revise downward is undisputed. The fact that Section 30 directs the Council to meet in special session and makes it the duty of the Council to hold daily sessions "until said ordinance is passed" leaves no room for the contention that it

could properly reject or return the ordinance and thus suspend consideration until further action by the Board. The fact that Section 30 requires that the proposed ordinance be publicly advertised by the Board prior to its submission to the Council indicates that the ordinance is not subject to upward revision after submission, either by the Council or by the Board.

The scheme of Section 30 is by no means a novel one. With minor variations it has been in effect since 1898 and was commented upon at length by this Court in *Baltimore City v. Gorter,* 93 Md. 1, 13 (1901). See also the Report of the Charter Commission of January 27, 1898, reprinted as a preface to the 1949 edition of the Charter. The purpose was to lodge "the general control of the financial policy of the city" in the Board of Estimates. Moreover, the precise questions now posed have been passed upon by at least six City Solicitors and answered contrary to the contentions now advanced. After extensive studies and revisions of the Charter, notably in 1918 and 1945, the basic scheme has been retained and the same language adopted and approved by the voters. In effect, the voters adopted the gloss put upon the language by the administrative construction. "It is well settled that a contemporaneous construction, especially where there are subsequent re-enactments without change of the language thus construed, is entitled to great weight." *Kimball-Tyler v. Mayor & C. C. of Baltimore City,* 214 Md. 86, 99, and cases cited.

The City Council is not the full counterpart of the General Assembly of the State, although even the powers of the General Assembly are limited by the Budget Amendment, Article III, sec. 52 of the State Constitution. All powers of a municipal corporation are derived from the State and are subject to legislation by the State. *Mayor & C. C. of Baltimore City v. Baltimore Gas & Electric Co.,* 221 Md. 94, 100, and cases cited. Cf. *Pressman v. D'Alesandro,* 211 Md. 50, 57. This is as true of the powers of the legislative department of the City government as it is of the powers of the municipal corporation in general. By an appropriate act of the legislature adopted in 1898 and by appropriate charter action in 1918

and 1945 under the Home Rule Amendment to the State Constitution, Article XI-A, which is itself a grant of power by the State, the powers of the legislative branch of the City of Baltimore with respect to the budget are restricted. The question is not one of inherent power. We construe the Charter as delegating only limited power to the City Council in matters pertaining to the budget and as not delegating the power to reject or return it after submission by the Board of Estimates. We may add that the City claimed no power to reject those portions of the budget relating to the public debt, which are mandatory alike upon the Board and Council.

For all of the reasons stated, we affirmed the order appealed from and directed that the costs of this appeal be paid by the Board of Estimates of Baltimore City.