526 A.2d 598

**BOYDS CIVIC ASSOCIATION, et al.**

v.

**MONTGOMERY COUNTY COUNCIL, et al.**

**Nos. 62, 100, Sept. Term, 1986 (Two Cases).**

Court of Appeals of Maryland.

June 8, 1987.

684

William J. Chen, Jr. (John F. McCabe, Jr., Chen, Walsh & Tecler, on brief), Rockville, and Allan A. Noble and Budow & Noble, P.C., on brief), Bethesda, for appellants.

Alan M. Wright, Senior Asst. Co. Atty. (Paul A. McGuckian, Co. Atty. on brief), Rockville, for appellee Montgomery County Council in No. 62.

Kathleen Sheehy (Charles G. Dalrymple and Linowes & Blocher, on brief), Silver Spring, for appellee Rockville Crushed Stone, Inc. in No. 62.

Arthur S. Drea, Jr., Gen. Counsel and Jane E. Allan, Associate Gen. Counsel, on brief, Silver Spring, for The Maryland-Nat. Capital Park and Planning Com'n in No. 62.

Jane E. Allan, Associate Gen. Counsel (Arthur S. Drea, Jr., Gen. Counsel, on brief), Silver Spring, for appellee The Maryland-Nat. Capital Park and Planning Com'n in No. 100.

Kathleen Sheehy (Charles G. Dalrymple and Linowes & Blocher, on brief), for appellee Rockville Crushed Stone, Inc. in No. 100.

Paul A. McGuckian, Co. Atty. and Alan M. Wright, Senior Asst. Co. Atty., on brief, Rockville, for appellee Montgomery County in No. 100.

Argued before ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr., Associate Judges of the Court of Special Appeals (retired), Specially Assigned.

MARVIN H. SMITH, Judge, Retired, Specially Assigned.

The Montgomery County zoning ordinance provides for what is called a Mineral Resource Recovery Zone. It is in the nature of a floating zone. A prerequisite to adoption of that zone for any specific area is that the master plan for the area must designate the land as suitable for such a zone. These two appeals involve an amendment to the

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Boyds Master Plan providing that certain land is suitable for such a zone.

In No. 62 we shall hold that property owners who contested the procedures leading to the designation of land adjacent to them on the Boyds Master Plan as suitable for such a zone presented an issue cognizable in a declaratory judgment action.

In No. 100 we shall hold that the adoption of an amendment to the master plan by the Maryland-National Capital Park and Planning Commission and the Montgomery County Council is not a contested case within the meaning of the Administrative Procedure Act and hence that the attempted appeal from such action was properly dismissed.

### I—No. 62

Boyds Civic Association and seven individual property owners brought an action for declaratory judgment in the Circuit Court for Montgomery County. The Maryland-National Capital Park and Planning Commission and the Montgomery County Council sitting as the District Council for that portion of the Maryland-Washington Regional District located within Montgomery County were named as defendants.[1] Rockville Crushed Stone, Inc., the owner of the land in question, was granted permission to enter the proceeding as a party defendant.

As this appeal was taken from an order dismissing the complaint, the facts summarized here are culled from the pleadings.[2] The sole issue before us is whether a justiciable controversy exists.

---

1. *See* Md.Code (1957, 1986 Repl.Vol.) Art. 28, § 7–111 providing that the Maryland-National Capital Park and Planning Commission members appointed in Montgomery County shall constitute the Montgomery County Planning Board and shall have responsibility for local planning matters. *See also* § 8–101 designating the Montgomery County Council as the District Council for that portion of the Maryland-Washington Regional District located within Montgomery County and granting zoning power to the District Council.

2. "In considering the sufficiency of a declaration on demurrer, [the reviewing court is] required to accept as true all well-pleaded material facts in the declaration and exhibits thereto as well as any reasonable inferences that may be drawn therefrom." *Flaherty v. Weinberg,* 303

Boyds, a rural community in northern Montgomery County, comprises some 3,085 acres and is the subject of a master plan duly approved and adopted in 1978. The individual parties plaintiff reside in Boyds "within sight and sound" of a 530–acre tract which Rockville Crushed Stone owns and upon which it wishes to operate a quarry. It may not do so, however, unless and until its land is rezoned from its current residential classification to that of a Mineral Resource Recovery Zone. As we indicated at the outset, a prerequisite to the granting of such zoning is that the applicable masterplan recommend that use for the property in question. The Boyds Master Plan approved and adopted in 1978 contained no such recommendation for the Rockville Crushed Stone property.

Rockville Crushed Stone commenced its efforts to obtain rezoning in 1981, by (1) filing a local zoning map amendment application with the District Council, and (2) requesting the Commission, through its Montgomery County Planning Board, to propose to the District Council that the 1978 Boyds Master Plan be amended to contain a recommendation of Mineral Resource Recovery Zone suitability for the land owned by Rockville Crushed Stone. Rockville was initially unsuccessful in its efforts. Ultimately, however, the master plan was amended in February 1985 as requested by Rockville.[3]

Petitioners contended in their complaint that the master plan amendment was approved and adopted in contraven-

Md. 116, 135–36, 492 A.2d 618, 628 (1985); *accord Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984). *Flaherty* and *Tadjer* involved demurrers under former Rules 345 and 371b. As of July 1, 1984, demurrers' were abolished. Certain grounds for demurrers are now covered by a motion to dismiss under Rule 2–322.

We took occasion in *Broadwater v. State*, 303 Md. 461, 465, 494 A.2d 934, 936 (1985), to point out that legions of our cases hold that a demurrer, the type of motion to dismiss here involved, is rarely appropriate in a declaratory judgment action. We went on to say, however, citing cases, that such a motion is proper if it is claimed that there is no justiciable controversy. 303 Md. at 467, 494 A.2d at 937.

**3.** We are advised that the local zoning map amendment application was denied by the District Council on June 10, 1986, and that this denial is currently under judicial review.

tion of state and county laws requiring notice and public hearings at certain stages of the amendment process. They sought in their action for declaratory judgment to have the trial court declare that the master plan amendment was "illegal, unlawful, invalid, of no force nor [sic] effect, and unconstitutional" because of these violations.

The circuit court dismissed the claim as not presenting a justiciable controversy. The Court of Special Appeals affirmed in *Boyds Civic Ass'n v. Montgomery County,* 67 Md.App. 131, 506 A.2d 675 (1986). We granted certiorari in order that we might address the important public question here presented. The Court of Special Appeals reasoned:

"Because the 1985 Amendment to the master plan merely *authorizes* but does not require the District Council to rezone the property with the MRR classification, it did not bestow upon RCS any right to use the property in a way that would affect the rights of the appellant[s]. *Compare Anne Arundel County v. Ebersberger,* [62 Md.App. 360, 489 A.2d 96 (1985) ].... On the date appellant[s] filed [their] complaint, the situation clearly was one where the court was being asked to decide future rights in anticipation of an event—the rezoning to MRR—which might never take place. Accordingly, we hold that the trial court correctly determined there to be no justiciable controversy. *See Ebersberger, supra. See also Tanner v. McKeldin,* 202 Md. 569, 97 A.2d 449 (1953)." 67 Md.App. at 144, 506 A.2d at 682 (emphasis in original; citation omitted).

As indicated, this proceeding was brought under the Maryland version of the Uniform Declaratory Judgments Act, which was altered slightly in language when it became Maryland Code (1974) §§ 3-401 to -415, Courts and Judicial Proceedings Article. Section 3-402 provides that the subtitle is remedial and "[i]ts purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." To this end "[i]t shall be liberally construed and administered." Section 3-406 provides:

"Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it."

With an exception not relevant to this proceeding, § 3–409(a) provides in pertinent part:

"(a) *In general.*—... [A] court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

"(1) An actual controversy exists between contending parties;

"(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

"(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

Section 3–409(b) states that if a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under the declaratory judgment subtitle. Section 3–409(c) provides that a party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

■ On numerous occasions, we have observed that under the statute "the existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action." *Hatt v. Anderson,* 297 Md. 42, 45, 464 A.2d 1076, 1078 (1983); *accord, e.g., Harford County v. Schultz,* 280 Md. 77, 80–87, 371 A.2d 428, 430–33 (1977);

*Reyes v. Prince George's County*, 281 Md. 279, 287–88, 380 A.2d 12, 17 (1977); *Hamilton v. McAuliffe*, 277 Md. 336, 339–40, 353 A.2d 634, 637 (1976). It follows, therefore, that in the absence of a justiciable controversy a court should not entertain an action for declaratory judgment.

This Court has defined a justiciable controversy as one wherein "there are interested parties asserting adverse claims *upon a state of facts which must have accrued* wherein a legal decision is sought or demanded." *Patuxent Co. v. Commissioners*, 212 Md. 543, 548, 129 A.2d 847, 849 (1957) (emphasis added) (quoting 1 W.H. Anderson, *Actions for Declaratory Judgments* § 17 (2d ed. 1951)); *accord Hatt*, 297 Md. at 45–46, 464 A.2d at 1078; *Harford County*, 280 Md. at 81, 371 A.2d at 430; *Reyes*, 281 Md. at 288, 380 A.2d at 17; *Pr. George's Co. v. Bd. of Trustees*, 269 Md. 9, 12, 304 A.2d 228, 230 (1973). In *Hatt*, Chief Judge Murphy cautioned for the Court that addressing non-justiciable issues "would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." 297 Md. at 46, 464 A.2d at 1078.

Borchard describes justiciability as a concept embodying· "numerous hurdles." E. Borchard, *Declaratory Judgments* 770 (2d ed. 1941). In the present case, the uncleared "hurdle," in the view of respondents, the Court of Special Appeals, and the trial judge, is that of ripeness. Generally, an action for declaratory relief lacks ripeness if it involves a request that the court " 'declare the rights of parties upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain.' " *Brown v. Trustees of M.E. Church*, 181 Md. 80, 87, 28 A.2d 582, 586 (1942) (quoting *Wahl v. Brewer*, 80 Md. 237, 243, 30 A. 654, 655 (1894)). In a similar vein the Court said in *Tanner v. McKeldin*, 202 Md. 569, 97 A.2d 449 (1953):

"In a declaratory judgment proceeding, the court will not decide future rights in anticipation of an event which may never happen, but will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision." 202 Md. at 579, 97 A.2d at 454.

*Accord Liss v. Goodman,* 224 Md. 173, 177, 167 A.2d 123, 125 (1961) (and cases cited therein). It may be said then that the purpose of the ripeness doctrine is to ensure that adjudication will dispose of an actual controversy in a conclusive and binding manner.

■ Especially in the context of a declaratory judgment action, ripeness can become an elusive concept. One of the primary objectives of the Act is to "relieve litigants of the rule of the common law that no declaration of rights may be judicially adjudged unless a right has been violated...." *Davis v. State,* 183 Md. 385, 388, 37 A.2d 880, 883 (1944). At the same time, the ripeness doctrine prohibits adjudication if the violation is but "future, contingent and uncertain." Borchard thus poses the question:

"When are the facts sufficiently developed to admit of a conclusive adjudication, and when are they so contingent and uncertain as to justify a refusal to decide? Again, no *a priori* answer is possible. The only safe guide is an analysis of the precedents in which declaratory judgments have been granted and declined." E. Borchard, *supra,* at 56.

■ In some situations, the existence or nonexistence of ripeness is a question of degree. To borrow a term coined by the Supreme Court of Pennsylvania, if a court is satisfied that the "ripening seeds" of an actual controversy exist, the facts are not too contingent or speculative for declaratory relief. *Kariher's Petition (No. 1),* 284 Pa. 455, 471, 131 A. 265, 271 (1925). Borchard explains:

"By 'ripening seeds' the court meant, not that sufficient accrued facts may be dispensed with, but that a dispute may be tried at its inception before it has accumulated the asperity, distemper, animosity, passion, and violence of the full-blown battle which looms ahead. It describes a state of facts indicating 'imminent' and 'inevitable' litigation, provided the issue is not settled and stabilized by a tranquilizing declaration." E. Borchard, *supra,* at 57.

He continues:

> "The imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen and upon which it would be improper to pass as operative facts." *Id.* at 60.

To date, the doctrine of ripeness as it applies to declaratory judgment actions has figured in only a handful of decisions by Maryland's appellate courts. In *Hatt*, 297 Md. 42, 464 A.2d 1076, a fire fighter sought a declaration of invalidity as to a county fire department regulation which prohibited criticism of superior officers. We held that the circuit court should have dismissed the complaint for lack of a justiciable issue. Any violation of Hatt's rights was, at that point, merely speculative:

> "There is no allegation that the regulation has been, or is threatened to be interpreted or applied by Klasmeier in any particular way. Nor does Hatt assert that any of his claimed free speech rights are actually being disputed, challenged or contested by the Fire Administrator. There is no indication that Hatt has been ordered to do, or not do, anything under the regulation, either in his individual capacity as a firefighter, or as president of the county firefighters' association. At most, Hatt speculates as to what might happen under the regulation if he criticizes his superior officers." 297 Md. at 47, 464 A.2d at 1079 (footnote omitted).

On the issue of ripeness, the case of *Hamilton v. McAuliffe*, 277 Md. 336, 353 A.2d 634, is equally clear. Hamilton, a Jehovah's Witness, was ordered by Judge John F. McAuliffe (then a judge of the Circuit Court for Montgomery County) to submit to an emergency blood transfusion. Eleven months later, Hamilton filed a declaratory judgment action in which he requested both a declaration that the judge's order had been "erroneous" and an order preventing the judge "from presently and in the future ordering a blood transfusion for Mr. Hamilton." 277 Md. 338, 353

A.2d at 636. The record contained no indication that Hamilton would require further transfusions in the future. On this and other aspects of the case, the Court concluded that the record plainly evidenced a lack of justiciability. 277 Md. at 341, 353 A.2d at 637. Chief Judge Murphy added for the Court:

"Whether an individual has the right to refuse a blood transfusion necessarily turns upon facts existing at the moment. *See* Anno., 9 A.L.R.3d 1391 (1966). The declaratory judgment process is therefore ill fitted as a vehicle to declare the rights of parties in future circumstances as yet unknown." 277 Md. at 341, 353 A.2d at 638.

*Tanner,* 202 Md. 569, 97 A.2d 449, furnishes another illustration of a lack of ripeness. The complainants in that case resided upon land over which the United States exercised exclusive jurisdiction, except that Maryland retained the right to serve thereon all civil and criminal process of the courts of this State. The complainants sought a declaration of their status, rights, and obligations with respect to several matters, including voting rights, payment of State income tax, and applicability of State probate and testamentary law.[4] Our predecessors affirmed the trial court's order sustaining a demurrer to the entire bill of complaint. Several of the issues were not justiciable because the complainants failed to allege the existence of a controversy. At one point in the opinion Judge Delaplaine said for the Court:

---

4. The full list of issues reads:
 "(1) registration and voting in County and State elections; (2) registration and voting in Presidential elections; (3) State income tax; (4) registration of motor vehicles; (5) tax on issuance of certificates of title for motor vehicles; (6) dog licenses; (7) probate and testamentary law; (8) inheritance and estate taxes; (9) civil suits in Frederick County; (10) nonresident attachment suits; (11) limitations of actions; (12) distribution of motor vehicle revenues to Frederick County; (13) distribution of income taxes to Frederick County; (14) eligibility for the office of notary public; (15) guardians and committees and treatment of insane in public institutions; eligibility for old age assistance and medical aid for indigent persons; and (16) sales taxes on property purchased in Maryland and delivered by mail or common carrier to the purchasers at Camp Detrick." 202 Md. at 575, 97 A.2d at 451.

"Complainants pray for advisory opinions on probate and testamentary laws and inheritance and estate taxes. In a declaratory judgment proceeding, the court will not decide future rights in anticipation of an event which may never happen, but will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision. *Petition of Kariher*, 284 Pa. 455, 131 A. 265, 271. Many things may happen before the death of complainants. They may no longer be residents of Camp Detrick. They may not own any property subject to inheritance or estate taxes. The Federal Government may not be exercising jurisdiction over the Camp Detrick land. The testamentary laws may be changed." 202 Md. at 579, 97 A.2d at 454.

On two occasions, this Court has held that declaratory judgment actions were not brought prematurely. In *Brown*, 181 Md. 80, 28 A.2d 582, remaindermen, life tenants, and an executor sought a declaration of their rights under a will and codicil which contained apparently conflicting provisions. The respondents objected on the ground that a declaration of the proper distribution of proceeds was premature so long as the life tenants remained alive. The Court acknowledged that a declaration concerning the proceeds would have no effect until the life tenancy ended. However, noting that the purpose of the rule against premature actions is to ensure the requisite conclusiveness of an adjudication, the Court held the prematurity objection to be without merit:

"[I]t is plain that the parties in the future will be the parties now before us, and that the parties now before us are of age and are competent to argue their right; in short, adjudication now will be conclusive and binding. For this reason, the prematurity objection seems without merit in view of the interest in settling the matter for personal representative's benefit early in his administration of the estate." 181 Md. at 88, 28 A.2d at 586.

*Liss*, 224 Md. 173, 167 A.2d 123, involved a dispute between the Baltimore City Council and that city's Board of

Estimates over their powers in budgetary matters. The City Council sought a declaration as to whether it had the authority to reject or return proposed budgets submitted to it by the Board of Estimates.[5] The case presented a question of ripeness because at the time the City Council sought the declaration, the Board of Estimates had not yet submitted the annual budget and there was no certainty that the City Council would even want to reject or return that particular budget. The Court held the action ripe nonetheless. We explained: "But the power [to reject or return a budget] is claimed, and in the light of the past history we think it is a fair assumption that the power would be exercised, if found to exist." 224 Md. at 177, 167 A.2d at 125. After noting that declaratory procedure should not be used to decide purely theoretical questions, Judge Henderson explained for the Court that the question before it was practical rather than theoretical:

> "The Council has asserted a right to reject or return the ordinance when submitted. To do so in the closing days of the year without a prior adjudication might well cause an impasse and seriously affect the City's financial needs and obligations. It would seem to be peculiarly appropriate to have the issue resolved in advance. Other courts have indicated that declaratory relief is appropriate where public agencies are at loggerheads." 224 Md. at 177–78, 167 A.2d at 125.

The Court of Special Appeals and the respondents perceive *Anne Arundel County v. Ebersberger,* 62 Md.App. 360, 489 A.2d 96 (1985), as governing the instant case. *See Boyds Civic Ass'n,* 67 Md.App. at 144, 506 A.2d at 682. In *Ebersberger,* a group of homeowners from the Indian Hills

---

**5.** The City Charter empowered the City Council to reduce certain budgetary appropriations proposed by the Board of Estimates, but expressly prohibited the City Council from increasing amounts or inserting new items into the Board's proposed budget. By the device of rejecting or returning a proposed budget, the City Council hoped to realize a means of pressuring the Board to supplement or amend proposed budgets. 224 Md. at 176, 167 A.2d at 124–25.

community in Anne Arundel County challenged as unconstitutional and ultra vires a county ordinance which authorized their community association, on behalf of the Indian Hills Special Community Benefit District, to raise money for swimming pool renovation and maintenance. The Court of Special Appeals held that the action lacked ripeness. In so doing, it emphasized the fact that the ordinance merely authorized, but did not require, the renovations and the fact that there was no certainty the work would ever be done:

> "[T]he ... ordinance does not *require* the district to renovate the pool; it merely *authorizes* such work. Nor does it specify any particular means of financing the renovation. There is certainly no assurance, from the record now before us, that a budget containing an appropriation for the pool will ever be approved or that a special benefit tax to support such an appropriation will ever be levied.

> "At least until the prospect of such an appropriation or such a tax becomes substantially more certain, the plaintiffs will have suffered no injury from the challenged ordinance, and its validity or invalidity is therefore of no practical consequence." 62 Md.App. at 371, 489 A.2d at 101–02 (emphasis in the original).[6]

██ In the case at bar, respondents (especially the Commission) urge application of the "authorizes but does not require" analysis employed by *Ebersberger*. The challenged amendment to the Boyds Master Plan merely authorizes the District Council to grant an application for Mineral Resource Recovery zoning; it does not require the District Council to do so. Consequently, respondents argue, the adoption of the amendment has not affected any of petitioners' legal rights or caused them any injury, and the future effect upon petitioners remains "wholly speculative." There is, however, an important distinction between *Ebersberger* and the case at bar. The *Ebersberger* court rea-

---

**6.** We were not asked for certiorari in the case and by citing this case we neither approve nor disapprove of its holding.

soned that the challenged ordinance could have no injurious effect upon the plaintiffs until the prospect of its implementation became "substantially more certain." 62 Md.App. at 371, 489 A.2d at 102. Here, by contrast, the challenged plan amendment was initiated, approved, and adopted in furtherance of an actual, pending application to amend the local zoning map. Moreover, the designation of an area on the applicable master plan as suitable for a Mineral Resource Recovery Zone was a condition precedent to the granting of an application for zoning of an area as a Mineral Resource Recovery Zone. In Count I of the complaint filed in the circuit court petitioners claimed that hearings—spanning some four days—on the application to amend the local zoning map would not have gone forward if the master plan had not been amended. In Count II petitioners alleged that the actions of the Commission and District Council with respect to the plan amendment forced petitioners to hire counsel and land consultants in order to participate in the local zoning map amendment proceedings. The prospect of a controversy, therefore, lay well beyond the realm of matters "future, contingent and uncertain." As did *Liss*, 224 Md. at 177, 167 A.2d at 125, this case presents a practical rather than a theoretical question.

It is the contention of the petitioners that their rights to notice of and a public hearing on the master plan amendment, *see* Code (1957, 1986 Repl.Vol.) Art. 28, § 7–108(b), (d), and Montgomery County Code (1984) ch. 33A, clearly were violated. If this be true, these rights were violated *prior* to the institution of the declaratory judgment proceeding. In their briefs and argument to us respondents do not speak to the justiciability of the allegedly accomplished violations of procedural rights. Instead, they focus on the argument that, since the master plan amendment confers no substantive right to operate a quarry upon Rockville Crushed Stone's property, the amendment has had no untoward effect upon the neighboring properties. The reasoning of respondents suffers from two deficiencies.

First, it does not take into account the precise interests which petitioners claim have been prejudiced. The complaint does not allege that the amendment had a deleterious effect, e.g., diminished property value, on petitioners' property. What the complaint does allege is (1) a denial of petitioners' statutory right to participate, via public hearing, in the master plan amendment process, and, as a result, (2) an unnecessary inconvenience and expense in opposing the rezoning application.

Case law and other authority contain scant discussion about the effects of failure to hold legislatively-mandated public hearings on proposed master plans or plan amendments. As noted earlier, notice and public hearings are indeed required at certain stages of the plan amendment process: Code (1957, 1986 Repl.Vol.) Art. 28, § 7–108(d)(2) requires notice and public hearing by the Commission on plan amendments, while Montgomery County Code (1984) § 33A–7(b)(ii) requires the District Council to hold a public hearing on a plan amendment "whenever the district counsel proposes any revisions, modifications or amendments to the final draft as submitted by the commission."

That the right to a public hearing on a proposed master plan or plan amendment, once conferred by statute or ordinance, possesses some significance has been implicitly recognized in *Wash. Co. Taxpayers Ass'n v. Board*, 269 Md. 454, 306 A.2d 539 (1973),[7] and expressly recognized in *Creative Displays, Inc. v. City of Florence*, 602 S.W.2d 682 (Ky.1980) (failure to hold statutorily-mandated public hearings on adoption of comprehensive plan rendered plan void). In *Wash. Co. Taxpayers Ass'n*, taxpayers sought a declaration that a plan adopted for Washington County was invalid because the county planning and zoning commission failed to provide adequate notice and hearing prior to adoption of

---

**7.** For discussions of the failure to properly conduct public hearings in the context of zoning as invalidating the actions of zoning authorities, see *Ford v. Baltimore County*, 268 Md. 172, 300 A.2d 204 (1973) and *Crozier v. Co. Comm. Pr. George's Co.*, 202 Md. 501, 97 A.2d 296 (1953).

the plan. After reviewing in detail the contents of the notice and the manner in which the public hearing was conducted, we held both to be adequate. 269 Md. at 464, 306 A.2d at 544. It is noteworthy that the suit challenged only the plan: at the time the taxpayers brought the action, the plan had not been implemented by passage of a zoning ordinance. 269 Md. at 464, 306 A.2d at 544. Although we suggested that the taxpayers' displeasure resulted more from the potential existence of any zoning than from the quality of the master plan, we did not consider the action premature.[8]

The second problem with the respondents' reasoning arises from an overbroad interpretation of case law pertaining to the advisory nature of master plans. Although this Court has remarked that master plans have only an advisory function in the zoning process, it has done so in markedly different contexts. *See Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 704, 376 A.2d 483, 493 (1977) (determining whether a rezoning was comprehensive and thus valid), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978); *Chapman v. Montgomery County,* 259 Md. 641, 271 A.2d 156 (1970) (where zoning map and master plan classify a property differently, zoning map prevails). Moreover, master plans are not invariably advisory. For example, a county's subdivision regulations may validly require subdivision proposals to conform to a master plan. *Coffey v. Md. Nat'l Cap. P & P Comm'n,* 293 Md. 24, 441 A.2d 1041 (1982) (a charter county); *Board of County Comm'rs v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979) (a non-charter county). Similarly, § 59–C–12.2 of the Montgomery County Code provides that the Mineral Resource Recovery Zone is applicable only where indicated as appropriate on the master plan. As respondents point out, however, compliance with § 59–C–12.2 does not entitle an applicant to the granting of Mineral Resource Recovery zoning. *See id.* § 59–C–12.1. Nonetheless, it does not follow that the process of

---

**8.** The issue of justiciability was neither raised nor decided.

amending the master plan to recommend Mineral Resource Recovery zoning gives rise to no justiciable interest on the part of neighboring property owners.

As we indicated earlier, Code (1974) § 3–402, Courts and Judicial Proceedings Article, indicates that the declaratory judgment subtitle is remedial and "[i]ts purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." The section specifically states that the subtitle "shall be liberally construed and administered."

In *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 595–96, 386 A.2d 1216, 1222–23 (1978), we concluded that there exists a strong legislative policy favoring the liberal use and interpretation of this subtitle to effectuate its broad remedial objectives. Designation of the area in question on the master plan for a Mineral Resource Recovery Zone is a necessary prerequisite to obtaining such rezoning. The petitioners are asserting that the master plan amendment procedures failed to comply with law. If proper procedures were not followed then there could be no valid plan and hence there could not be Mineral Resource Recovery zoning. So long as the master plan recommends Mineral Resource Recovery zoning for the property of Rockville Crushed Stone, petitioners face the threat of expensive and time consuming hearings on rezoning applications. The threat of such potential rezoning then hangs like a pall of smoke over the properties "within sight and sound" of the land sought to be quarried. We believe and hold that a justiciable controversy exists as to whether the master plan amendment has been properly adopted. Accordingly, it follows that the Court of Special Appeals and the trial court erred. The trial court must settle the controversy by declaring the rights of the parties.

II—No. 100

■ In No. 100 Boyds Civic Association and the same property owners as are in the appeal in No. 62, discussed in I, filed an order of appeal in the Circuit Court for Montgom-

ery County "from the action of the Maryland-National Capital Park & Planning Commission taken on February 13, 1985, and the Montgomery County Council, sitting as the District Council for that portion of the Maryland-Washington Regional District located within Montgomery County, Maryland, taken on January 22, 1985, ... to adopt amendments to the 1978 Approved and Adopted Boyds Master Plan, *etc.....*"

The chronology, as alleged in the pleadings, is as follows:

January 1983—The Planning Board of the Commission prepared a "Final Draft Boyds Master Plan."

March 1983—The Commission submitted the final draft to the District Council.

June 14 and June 16, 1983—The District Council held public hearings on the final draft.

July 26 and October 4, 1983, and March 13, March 27, and July 24, 1984—The District Council held work sessions on the final draft.

January 22, 1985—The District Council approved the 1985 amendment to the 1978 Boyds Master Plan designating the property in question as suitable for mineral resources extraction.

February 13, 1985—The Commission adopted the 1985 amendment.

Leave was granted in the administrative appeal proceeding to Montgomery County and to Rockville Crushed Stone to intervene as parties defendant. All parties defendant filed motions to dismiss, claiming lack of jurisdiction over the subject matter. The motions to dismiss were granted.

An appeal to the Court of Special Appeals followed. The intermediate appellate court affirmed the judgment of the trial court in No. 1340, unreported, September Term, 1985, decided June 19, 1986. In the course of its opinion the Court of Special Appeals made reference to its earlier opinion which we have discussed in I. It concluded:

"As we have indicated, the 1985 Amendment did not rezone the RCS property. In order for the property to be

rezoned to the MRR zone, RCS must request rezoning via an application for a local map amendment, including a detailed development plan for the project addressing numerous issues involving compatibility. The indication within the 1985 Amendment of the appropriateness of the MRR Zone is advisory only and does not mandate rezoning of the RCS property....

The appellants have suffered no injury as a result of the adoption of the 1985 Amendment. The future effect of its adoption is entirely speculative at this point. Moreover, the 1985 Amendment did not confer any right, duty, statutory entitlement, or privilege as required by [Code (1984)] § 10–201(c) [, State Government Article].... Rather, it is a mere guide or scheme recommended to the legislative branch in order to enable them to make intelligent decisions about zoning classifications. *Iverson v. Zoning Board of Howard County,* 22 Md.App. 265, 269 [322 A.2d 569] (1974), citing *Pattey v. Board of County Commissioners,* 271 Md. 352, 360 [317 A.2d 142] (1974).

"For these reasons, we hold that the approval and adoption of the 1985 Amendment by the Commission was not a contested case within the meaning of § 10–201(c) and, thus, the circuit court properly concluded that it did not have jurisdiction to entertain an appeal from that action pursuant to § 10–215."

We granted appellants' petition for a writ of certiorari addressed to the issue of:

"whether the adoption of an amendment to a master plan by a state agency is a 'contested case' under the Maryland Administrative Procedure Act."

We agree with the Court of Special Appeals that there was not a contested case under the Administrative Procedure Act here but we disagree with its reasoning.

Maryland Rule B1.a declares: "This Subtitle shall apply to the review of any final action of an administrative agency by a court where such review is specially authorized by statute...." Subtitle B does not create any right to appeal the final action of an administrative agency; it

merely establishes the procedure for doing so. *See, e.g., Co. Council v. Carl Freeman Assoc.*, 281 Md. 70, 74, 376 A.2d 860, 862 (1977).

Numerous code provisions specifically authorize judicial review of actions of various administrative agencies. The sole provision claimed to apply in this case is Code (1984), § 10–215(a), State Government Article, a part of the Administrative Procedure Act:

"A party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section."

Section 10–201(c), in turn, defines "contested case" as

"a proceeding before an agency to determine ... a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing...." [9]

Section 10–201(b) states:

"(b) *Agency.*—'Agency' means:

"(1) an officer or unit of the State government authorized by law to adjudicate contested cases; or

"(2) a unit that:

"(i) is created by general law;

"(ii) operates in at least 2 counties; and

"(iii) is authorized by law to adjudicate contested cases."

The Montgomery County Council is not "an officer or unit of the State government."

The proceedings before the Planning Commission are not a contested case within the meaning of the Administrative Procedure Act for the reason that the ultimate decision as to whether a plan is to be adopted or rejected resides with the County Council and not with the Planning Commission. *See* Code (1957, 1986 Repl.Vol.) Art. 28, § 7–108(b)(1)(i),

---

**9.** Section 10–215(c) additionally provides that an agency proceeding pertaining to the grant, denial, etc., of a license can constitute a contested case. No license is involved here.

(d)(1), and (d)(2)(i). In fact, subsection (d)(2)(i) provides that in Montgomery County the district council is to establish by ordinance the "procedures for the submission, adoption, approval, and amendment of any plan or part thereof by the Commission." It undoubtedly is in exercise of that authority (and consistent with the other provisions of § 7–108) that Montgomery County Code (1984) § 33A–8 was enacted. It provides:

> "Within thirty (30) days following approval by the district council of the final draft of a plan, the final draft *shall* be adopted by the commission in the form approved by the council." (Emphasis added.)

Hence, the action of the Commission from which the appeal was taken was not one "to determine ... a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing," the requisites for a contested case, but an action that was mandated by statute.

Although Code (1957, 1986 Repl.Vol.) Art. 28 assigns certain planning and zoning functions to the Montgomery County Council, it is created by the Montgomery County charter, not by general law. It obviously operates only in Montgomery County. Hence, it fails to fit the definition of "agency" contained in § 10–201(b)(2) of the State Government Article. It follows, therefore, that there was no contested case because, as we have seen, under § 10–201(c), State Government Article, for there to have been a contested case there must have been a proceeding before an agency as defined in the Administrative Procedure Act.

Accordingly, the Court of Special Appeals and the trial court were correct in determining that there was no contested case here, but not for the reasons specified by the Court of Special Appeals.

JUDGMENT IN NO. 62 REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR PASSAGE OF AN ORDER REVERSING THE ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY

DISMISSING THE PROCEEDING AND REMANDING THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; RESPONDENTS TO PAY THE COSTS.

JUDGMENT IN NO. 100 AFFIRMED; PETITIONERS TO PAY THE COSTS.