State of Maryland, et. al v. G & C Gulf, Inc., Misc. No. 4, Sept. Term 2014, Opinion by Battaglia, J.

**JUDICIAL REVIEW – RIPENESS – THREAT OF PROSECUTION**

In order for a claim to constitute a judiciable controversy a litigant challenging the constitutionality of a criminal statute must have been prosecuted for the statutory acts or have experienced a credible threat of prosecution.

Circuit Court for Anne Arundel County,
Maryland
Case No. 02-CV-12-172778
Argued: March 11, 2015

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 4

September Term, 2014

STATE OF MARYLAND, ET AL.

v.

G & C GULF, INC.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Battaglia, J.

Filed:  April 22, 2015

We are called upon in this case, seminally, to address justiciability, which has been defined as, "[t]he quality, state, or condition of being appropriate or suitable for adjudication by a court." Black's Law Dictionary 997 (10th ed. 2014). The doctrine has been "'developed to identify appropriate occasions for judicial action.'" *State Center, LLC v. Lexington Charles Ltd. Partnership*, 438 Md. 451, 498, 92 A.3d 400, 427 (2014), quoting 13 Charles Alan Wright, et al., Federal Practice and Procedure § 3529, at 611 (3d ed. 2008). Issues of justiciability may encompass unripe and moot controversies, abstract or hypothetical disputes, collusive lawsuits and claims by disinterested plaintiffs. John A. Lynch, Jr. & Richard W. Bourne, Modern Maryland Civil Procedure 2-8 (2d ed. 2004, 2014 supp.). "When a court believes a litigant's claim is somehow unfit for judicial determination, it dismisses the claim under the rubric of 'justiciability.'" *Id.* at 2-3. The rationale for the doctrine is that "addressing non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." *State Center, LLC*, 438 Md. at 591, 92 A.3d at 483-84 (internal quotation marks omitted).

Ripeness is the issue in the present declaratory judgment action, which pits G & C Gulf, Inc. ("G & C Gulf"), Respondent, a towing company located in Montgomery County, Maryland, the victor at the trial level, against the State, with respect to towing statutes enacted by the General Assembly in 2012, currently codified as Sections 21-10A-01 through 21-10A-06 and 27-101(c)(25) of the Transportation Article of the Maryland Code.[1] The contested provisions provide:

---

[1] Senate Bill 401, "Motor Vehicles – Towing Practices and Procedures" was enacted

(continued . . . )

(a) *In general.* — Unless otherwise set by local law, a person who undertakes the towing or removal of a vehicle from a parking lot:

\*\*\*

(3) Shall notify the owner, any secured party, and the insurer of record by certified mail, return receipt requested, and first-class mail within 7 days, exclusive of days that the towing business is closed, after towing or removing the vehicle, and shall provide the same information required in a notice to a police department under item (2) of this subsection;

\*\*\*

(7) May not employ or otherwise compensate individuals, commonly referred to as "spotters", whose primary task is to report the presence of unauthorized parked vehicles for the purposes of towing or removal, and impounding;

Md. Code Ann., Transp. § 21-10A-04(a)(3), (a)(7). A violation of Section 21-10A-04(a)

is a criminal offense and subjects the violator "to a fine of not more than $500 or

imprisonment for not more than 2 months or both". Md. Code Ann., Transp. § 27-

101(c)(25).

---

( . . . continued)
during the 2012 sessions. 2012 Md. Laws 1389-1412. The Legislature repealed the prior Section 21 Title 10A of the Transportation Article, which had applied only to Baltimore County and Baltimore City, and reenacted the statute, codifying it as Sections 21-10A-01 through 21-10A-06 and 27-101(c)(25) of the Transportation Article of the Maryland Code, which became effective October 1, 2012. All references to Section 21 Title 10A and Section 27-101(c)(25) are to the 2013 iteration of the Transportation Article of the Maryland Code, unless otherwise specified.

With respect to the purpose of the ripeness doctrine, we have said it is "to ensure that adjudication will dispose of an actual controversy in a conclusive and binding manner." *State Center, LLC*, 438 Md. at 591-92, 92 A.3d at 484 (internal quotation marks omitted).[2] An action for declaratory judgment is not treated differently than any other suit for purposes of ripeness.[3] *Hatt v. Anderson*, 297 Md. 42, 45, 464 A.2d 1076, 1078 (1983) ("[T]he existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action."). "Generally, an action for declaratory relief lacks ripeness if it involves a request that the court declare the rights of parties upon a state of facts which has not yet arisen, or upon a matter which is future, contingent and uncertain." *State Center, LLC*, 438 Md. at 591, 92 A.3d at 484. In *Hamilton v. McAuliffe*, 277 Md. 336, 339-40, 353 A.2d 634, 637 (1976), we summarized the necessity of a justiciable controversy to a declaratory judgment action; we opined:

---

[2] In some of our earlier cases we conflated the concept of "standing" with ripeness. *See Hitchcock v. Kloman*, 196 Md. 351, 356, 76 A.2d 582, 584 (1950); *Hammond v. Lancaster*, 194 Md. 462, 471-72, 71 A.2d 474, 477-78 (1950). In *State Center, LLC*, 438 Md. at 498, 92 A.3d at 428, we distinguished the two doctrines, which fall under the "umbrella of justiciability". Standing refers to whether "'the plaintiff [has] show[n] that he or she is entitled to invoke the judicial process in a particular instance.'" *Id.* at 502, 92 A.3d at 430, quoting *Kendall v. Howard Cnty.*, 431 Md. 590, 593, 66 A.3d 684, 685 (2013). The issue of ripeness, meanwhile, arises if parties, entitled to invoke the judicial process, ask the court to declare their rights "'upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain.'" *Id.* at 591, 92 A.3d at 484, quoting *Boyds Civic Ass'n v. Montgomery Cnty. Council*, 309 Md. 683, 690, 526 A.2d 598, 602 (1987).

[3] Section 3-409(a) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 2013 Repl. Vol.) provides, with an exception not relevant here, that:
> a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the

(continued . . . )

3

That the existence of a justiciable controversy is a prerequisite to the maintenance of a declaratory judgment in Maryland is well settled. *Prince George's Co. v Bd. of Trustees*, 269 Md. 9, 304 A.2d 228 (1973). A controversy is justiciable "'when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded.'" *Patuxent Co. v. Commissioners*, 212 Md. 543, 548, 129 A.2d 847 (1957). It is thus clear that the declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise, *Prince George's Co. v. Chillum-Adelphi*, 275 Md. 374, 340 A.2d 265 (1975); *Liss v. Goodman*, 224 Md. 173, 167 A.2d 123 (1961), or questions which have become moot, *Eberts v. Congress'l Country Club*, 197 Md. 461, 79 A.2d 518 (1951), or merely abstract questions, *Davis v. State*, 183 Md. 385, 37 A.2d 880 (1944). That the declaratory judgment process should not be used where a declaration would not serve a useful purpose or terminate a controversy is equally well settled. *Liss v. Goodman*, *supra*; *Bachman v. Lembach*, 192 Md. 35, 63 A.2d 641 (1949); *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 56 A.2d 144 (1947).

The present action arose when G & C Gulf filed a complaint in the Circuit Court for Anne Arundel County and requested a declaratory judgment, a temporary restraining order, a preliminary injunction and a permanent injunction against the State of Maryland, the Governor of Maryland, the Acting Secretary of the Maryland Department of Transportation[4] and the Attorney General of Maryland, challenging the constitutionality of Sections 21-10A-04(a)(3) and 21-10A-04(a)(7); the State's Attorney for Montgomery

---

( . . . continued)

proceeding, and if:
     (1) An actual controversy exists between contending parties;
     (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
     (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

[4] Darrell Mobley, Acting Secretary of the Maryland Department of Transportation, was later dismissed as a defendant.

4

County and Montgomery County were later added as defendants. The complaint was amended again to reflect that, in 2013, the Legislature amended Section 21-10A-04(a)(3) to extend from three days to seven days the requirements for towing companies to inform "the owner, any secured party, and the insurer of record".[5]

In its complaint, G & C Gulf alleged that its "rights, duties, status and legal relations are affected by" the statute, and further, that it is "in jeopardy of being charged with criminal offenses under provisions of [the contested statute]". G & C Gulf's factual allegations were sparse, reflecting mainly G & C Gulf's business practices and the roles of the various Governmental entities identified as defendants:

> 10. Plaintiff is engaged in the business within Maryland of the towing or removal of vehicles from parking lots which includes privately owned facilities consisting of 3 or more spaces for motor vehicle parking that are accessible to the general public and intended by the owners of the facilities to be used primarily by the owner's customers, client[e]le, residents, lessees or guests.
>
> ***
>
> 12. The [contested statute] governs the conduct of Plaintiff's business within Maryland of the towing or removal of vehicles from parking lots which include privately owned facilities consisting of 3 or more spaces for motor vehicle parking that are accessible to the general public and intended by the owners of the facilities to be used primarily by the owner's customers, client[e]le, residents, lessees or guests.
>
> ***
>
> 15. Plaintiff's rights, duties, status and legal relations are affected by the [contested statute].
>
> 15.A. Defendants State, Governor, Attorney General, State's Attorney and County (through its Department of Police) have authority to enforce Maryland laws in Montgomery County, Maryland, and have authority to enforce the [contested statute] in Montgomery County, Maryland.

---

[5] Effective October 1, 2013, Section 21-10A-04(a)(3) was amended to increase the notice provision from three days to seven days. 2013 Md. Laws 3431-34.

16. Plaintiff is in jeopardy of being charged with criminal offenses under provisions of the [contested statute] with which Plaintiff cannot comply and/or are arbitrary, oppressive and unreasonable, violate Article 24 of the Maryland Declaration Of Rights, violate the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution, are void for vagueness, and are unconstitutional.

Additional allegations G & C Gulf included reflected a history of the enactment of the statute, and a comparison of the statute to a prior, non-penal, Montgomery County towing statute. G & C Gulf did not allege that it had been prosecuted or threatened with prosecution under the statute nor that it actually had engaged in activities prohibited by the statute.

G & C Gulf, specifically, alleged that Section 21-10A-04(a)(3), which now provides seven days for a towing company to notify the owner of a vehicle that his or her car was towed, "is arbitrary, oppressive and unreasonable, violates Article 24 of the Maryland Declaration of Rights,[6] violates the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution,[7] is void for vagueness, and is unconstitutional", because it creates requirements with which towing companies cannot comply and that the violation of those requirements is criminalized. G & C Gulf averred:

27. In the course of its business, Plaintiff tows vehicles insured by insurers not authorized to write a vehicle liability policy in Maryland. The [contested statute] does not require the Administration to provide towers with a database containing "the proper address for providing notice to an insurer under

---

[6] Article 24 of the Maryland Declaration of Rights provides:
That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

[7] The Fourteenth Amendment to the United States Constitution provides:
[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .

6

subsection (a) (3) of this section for each insurer" not authorized to write a vehicle liability policy in the State. Absent the Administration's providing such information, Plaintiff will not be able to comply with the requirement to notify the insured under Section 21-10A-04(A) (3) . . . . As of the date of filing this action, it is Plaintiff's understanding that the Administration will not make such information available to any tower free of charge. Because the notice provisions of Section 21-10A-04(A) (3) impose requirements with which a tower cannot comply, the State's exercise of its police power to impose such notice requirements is an arbitrary, oppressive and unreasonable exercise of its police power, violate Article 24 of the Maryland Declaration Of Rights, violate the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution, are void for vagueness, and are unconstitutional.

28. In the course of its business, Plaintiff tows vehicles that are not registered in Maryland (herein "Out Of State Vehicles"). The [contested statute] does not exempt towed vehicles which are Out Of State Vehicles from the notice provisions in Section 21-10A-04(a) (3); yet, the [the contested statute] does not require the Administration to maintain and make available to any tower free of charge a database for the tower to obtain the name and address of the owner, any secured party, and the insurer of record of Out Of State Vehicles in order to be able to comply with the notice provisions of Section 21-10A-04(a)(3). Because the notice provisions of Section 21-10A-04(A) (3) impose -- requirements the violation of which are crimes -- with which a tower as "a person who undertakes the towing or removal of a vehicle from a parking lot" cannot comply, the State's exercise of its police power to impose such notice requirements is an arbitrary, oppressive and unreasonable exercise of its police power, violate Article 24 of the Maryland Declaration Of Rights, violate the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution, are void for vagueness, and are unconstitutional.

G & C Gulf also challenged Section 21-10A-04(a)(7), which prohibits towing companies from "employ[ing] or otherwise compensat[ing] individuals, commonly referred to as 'spotters', whose primary task is to report the presence of unauthorized parked vehicles for the purposes of towing or removal, and impounding", by alleging that it is arbitrary, oppressive and unreasonable, void for vagueness, violates Article 24 of the Maryland Declaration of Rights and violates the Due Process Clause of the 14th

Amendment of the United States Constitution. G & C Gulf alleged that it is not a violation of the statute or Maryland law for individuals to have the primary task of reporting unauthorized vehicles, but it is a violation for towing companies to "employ" individuals with the primary task of reporting authorized vehicles, so that Section 21-10A-04(a)(7) is unconstitutional:

> 34. It is an arbitrary, oppressive and unreason[a]ble exercise of the State's police power, a violation of Article 24 of the Maryland Declaration Of Rights, a violation of the [D]ue [P]rocess [C]lause of the 14th Amendment to the United States Constitution, are void for vagueness, and are unconstitutional, for the State to enact a law prohibiting -- and making a crime -- a "person who undertakes the towing or removal of a vehicle from a parking lot" to "employ or otherwise compensate an individual whose primary task is to report the presence of unauthorized parked vehicles for the purpose of towing or removal, and impounding" *when*: (i) it is not a violation of the [contested statute] or of any other Maryland law for "individuals" to have the "primary task" to "report the presence of unauthorized parked vehicles for the purpose of towing or removal, and impounding" and (ii) it is not a violation of the [contested statute] or of any other Maryland law for any "person" to "employ or otherwise compensate individuals" whose "primary task is to report the presence of unauthorized parked vehicles for the purpose of towing or removal, and impounding".

G & C Gulf contended that the phrase "primary task" is void for vagueness, "because from that language Plaintiff does not know what conduct on its part will subject it" to a fine or imprisonment. G & C Gulf alleged, additionally, that Section 21-10A-04(a)(7) goes against the additional requirement of Section 21-10A-04(a)(5)(iii) for the towing company to provide "[p]hotographic evidence of the violation or event that precipitated the towing of the vehicle", because the towing companies cannot compensate individuals to gather and report the required photographic evidence without, in turn, violating Section 21-10A-04(a)(7). G & C Gulf requested that the court enter a temporary

8

restraining order, a preliminary injunction and a permanent injunction enjoining the State from enforcing Sections 21-10A-04(a)(3) and (a)(7) of the Transportation Article and to enter a declaratory judgment determining that the Sections are unconstitutional.

After the matter was joined, discovery ensued. G & C Gulf, in a response to an interrogatory propounded by the State asking for it to "[i]dentify, for each of the past five calendar years . . . the number of vehicle[s] you have removed that are not registered in Maryland", answered that it had removed 1,848 vehicles not registered in Maryland in 2013, 2,417 in 2012, and 2,413 in 2011.

Trial commenced on February 19, 2014, in the Circuit Court for Anne Arundel County. Montgomery County was represented by an Assistant County Attorney, and the remaining defendants were represented by an Assistant Attorney General. The Assistant Attorney General orally moved for summary judgment arguing that the case did not present a justiciable controversy, because there was no actual or threatened prosecution of G & C Gulf under the statute. A colloquy ensued among the judge, the Assistant Attorney General and the Assistant County Attorney:

> THE COURT: So, on behalf of the State of Maryland, are you offering a stipulation that [G & C Gulf] will not be prosecuted?
> [ASSISTANT ATTORNEY GENERAL]: I can't do that. Frankly, Your Honor, that is not really the issue. When and if that ever happens, that is when it becomes a justiciable controversy. But I think if they have been towing to the tune of 1,848 vehicles and they have actually been towing -- in 2012, they towed 2,417 and 2012 was actually when the law was in effect and nothing has happened to them.
> So, I think it is fair to say that if that holds, they are never going to be threatened with prosecution let alone even prosecuted.
> THE COURT: Ms. [Assistant Attorney for Montgomery County], do you want to say me too, or, take no position or --

9

[ASSISTANT ATTORNEY FOR MONTGOMERY COUNTY]: Your Honor, thank you. Montgomery County has been named as a Defendant because our Police Department is the one that is enforcing the statute. But we don't really have a position either way. If the statute were declared unconstitutional, then, obviously, we wouldn't enforce it, but we are enforcing it now because it is the law.

THE COURT: When you say we are enforcing it now, if we morphed into opening statements, is that -- would it be the position of the county that, in fact, you are ready to charge and prosecute or at least take to the Commissioner's Office the Plaintiff?

[ASSISTANT ATTORNEY FOR MONTGOMERY COUNTY]: Yes.

The president as well as the general manager of G & C Gulf testified. Neither of them, however, identified any prosecution, threat of prosecution, or any violation of the statute by the company. In closing argument, counsel for G & C Gulf stated: "I am not aware and I would be aware whether or not [the president of G & C Gulf] or his company or anybody in the company had yet received a citation. I am not aware of that having happened."

In response to the oral summary judgment motion, G & C Gulf filed a post-hearing memoranda related to ripeness, in which it emphasized the statement made by the Assistant County Attorney for Montgomery County. G & C Gulf posited that it was a judicial admission[8] by an entity which, through its police department, would enforce the statute. The State, in its reply, argued that the Assistant County Attorney's statement in open court was of "dubious worth" and did not constitute a specific threat against G & C Gulf, because, *inter alia*, it was "not specifically directed at G & C Gulf" and amounted to "nothing more than a recitation of the County police force's intention to fulfill its general duty to enforce

---

[8] A judicial admission "by counsel becomes a substitute for evidence." *Prince Georges Properties, Inc. v. Rogers*, 275 Md. 582, 587-88, 341 A.2d 804, 807 (1975), citing 9 J. Wigmore, Evidence §§ 2588-90 (3d ed. 1940).

10

the law." The State contended, additionally, that "there was no evidence (or even allegation

in any pleading) that the State's Attorney for Montgomery County has threatened G & C

Gulf or anyone else with criminal prosecution for violating this statute."

On April 7, 2014, the Circuit Court Judge filed a written opinion in which he denied

the oral motion. The trial judge relied on the Assistant County Attorney's statement in open

court to find that G & C Gulf had presented a justiciable controversy because "counsel for

the Montgomery County Government (including its police department) stated the intention

of that county government to enforce the new towing law."

The trial judge next turned to the merits of the case and granted G & C Gulf's

requests for declaratory and injunctive relief as to Sections 21-10A-04(a)(3), (4)[9] and (7).

With respect to Section 21-10A-04(a)(3), the trial court agreed with G & C Gulf that it was

"arbitrary, oppressive and unreasonable":

> The statute is *arbitrary*, not having provided a reasonable amount of time for
> the traditionally-required transmission of mail and a reasonable amount of
> time for processing out-of-state requests. It is *oppressive* since each violation
> could result in a misdemeanor conviction, fine and incarceration. It is
> *unreasonable* as applied, particularly in a jurisdiction (Montgomery County)
> located near other states' and the District of Columbia boundaries such that
> the towing company reportedly must handle many out-of-state vehicles
> whose registration and owners' information are not available except via mail.

---

[9] The circuit court determined that it was necessary to sever Section 21-10A-04(a)(3), which requires the towing company to provide notice within seven days to "the owner, any secured party, and the insurer of record" of a towed car, in its entirety. The court determined that, because providing notice was no longer necessary were Section 21-10A-04(a)(3) to be severed, Section 21-10A-04(a)(4), which requires the towing company to "provide to the owner, any secured party, and the insurer of record the itemized actual costs of providing notice under this section", could not be complied with and, therefore, also must be severed.

The trial court addressed Section 21-10A-04(a)(7) and determined that the phrase "primary task" was void for vagueness. The trial court reasoned:

> This Court agrees with Plaintiff that the scope of the term "primary task" is sufficiently ambiguous that a reasonable person is required to guess at its precise meaning in context. Due to this omission of a cogent definition, the "primary task" spotter aspect of the statute fails the constitutional test and may not be enforced.

The trial judge ultimately severed Sections 21-10A-04(a)(3), (4) and (7) and granted injunctive relief, stating:

> This Court finds that the arrest of the towing companies' employees, its own public exposure to prosecution and criminal convictions, as well as substantial costs required for impracticable efforts at compliance, collectively provide the "irreparable injury" sufficient for injunctive relief.

A separate order was filed the same day, consistent with the trial court's opinion, severing Sections (a)(3), (4) and (7) from the remainder of the statute and enjoining their enforcement.

The State noted an appeal and the Court of Special Appeals, pursuant to Maryland Rule 8-304,[10] certified to this Court the following question of law: "Whether [Sections 21-

---

[10] Maryland Rule 8-304 provides:
> (a) **Initiation.** At any time before issuance of a mandate, the Court of Special Appeals or the panel of that Court to which the action has been assigned may certify a question of law or the entire action to the Court of Appeals. Upon transmission to the Court of Appeals, a copy of the certification shall be forwarded to the Chief Judge of the Court of Special Appeals and to the parties. The Court of Appeals may consider the certification pursuant to its authority to issue a writ of certiorari on its own motion.
> (b) **Content.** The certification shall briefly describe the action, state the question of law and the facts on which the question arises, and state the reason for certification.
> (c) **Disposition of certification.** The Court of Appeals may refuse the

(continued . . .)

10A-04(a)(3), (4) and (7) of the Transportation Article of the Maryland Code] are unconstitutional."

We reformulated the certified question of law for response by the parties as:

(1) Whether there is a justiciable controversy between the parties.
(2) Whether Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2013 Supp.) ("Transp.") §§ 21-10A-04(a)(3) and 21-10A-04(a)(4) are arbitrary, oppressive, or unreasonable and, thus, unconstitutional under Article 24 of the Maryland Declaration of Rights; and, if so, whether Transp. §§ 21-10A-04(a)(3) and 21-10A-04(a)(4) are severable.
(3) Whether Transp. § 21-10A-04(a)(7) is void for vagueness and, thus, unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and, if so, whether Transp. § 21-10A-04(a)(7) is severable.

We answer the first of the reformulated certified questions of law from the Court of Special Appeals in the negative and thereby need not address the remaining questions, because there is not a justiciable controversy when G & C Gulf has not been prosecuted under the statute nor has it alleged and proven that there has been a credible threat of prosecution for the acts proscribed by the statute.

The pivotal issues undergirding the ripeness analysis are whether G & C Gulf was prosecuted or whether an actual threat of prosecution was manifested by the Assistant

---

(continued . . . )
   certification or may issue a writ of certiorari that (1) accepts the certification as submitted, (2) modifies the questions of law certified, (3) includes the entire action although only a question of law was certified, or (4) limits review to only a question of law although the entire action was certified. The Clerk of the Court of Appeals shall send the order refusing the certification or the writ of certiorari to the Court of Special Appeals and to the parties.
   (d) **Record extract and briefs.** If the Court of Appeals issues a writ of certiorari, the filing of a record extract and briefs shall be governed by Rules 8-501 through 8-511 unless the Court orders otherwise.

13

County Attorney when she stated, "we are enforcing [the statute] now because it is the law", and, in response to the trial judge's question asking if she was "ready to charge and prosecute or at least take to the Commissioner's Office the Plaintiff", replied "Yes." A litigant must allege and prove that they have been prosecuted for a crime or that there is a credible threat of prosecution under a contested statute in order for the issue to constitute a justiciable controversy. *See WAAM, Inc. v. Ober*, 199 Md. 203, 208, 86 A.2d 399, 402 (1952); *Hitchcock v. Kloman*, 196 Md. 351, 356, 76 A.2d 582, 584 (1950); *Hammond v. Lancaster*, 194 Md. 462, 473-74, 71 A.2d 474, 479 (1950). *Hammond v. Lancaster*, *Hitchcock v. Kloman* and *WAAM, Inc. v. Ober* are illustrative.

In *Hammond v. Lancaster*, 194 Md. at 469, 71 A.2d at 476-77, a group of plaintiffs, including college professors, teachers, a salesman, physicians and a sculptor, challenged the constitutionality of the Subversive Activities Act of 1949, which required, *inter alia*, State employees to make a loyalty oath or face criminal penalties under the statute. We determined the suit was not justiciable as, "[n]one of the complainants ha[d] been threatened with prosecution, nor d[id] they allege any facts to indicate that they ha[d] violated, or [were] about to violate, any of the criminal provisions of the Act." *Id.* at 477-78, 71 A.2d at 481. A single plaintiff, as a state employee, fell under the provisions of the Act, "[b]ut she [did] not allege that she [was] threatened with discharge, that she ha[d] been ordered to take an oath, or that she ha[d] refused or w[ould] refuse to take it." *Id.* at 478, 71 A.2d at 481. We opined that "the general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. The mere existence of a criminal statute is not such a threat as to present a justiciable controversy." *Id.* at 473-74,

14

71 A.2d at 479 (citations omitted). We observed that the constitutionality of a statute will not be evaluated by a court "'until faced with cases involving particular provisions as specifically applied to persons who claim to be injured.'" *Id.* at 473, 71 A.2d at 478, quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). We stated also that "'[a] hypothetical threat is not enough.'" *Id.* at 473, 71 A.2d at 479, quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947).

Similarly, in *Hitchcock v. Kloman*, 196 Md. at 354, 356, 76 A.2d at 583, 584, we affirmed the trial court's dismissal of a suit challenging the constitutionality of a statute criminalizing the practice of medicine or surgery by individuals not registered as physicians or surgeons. Hitchcock, a naturopathy practitioner,[11] filed a claim against the Maryland Board of Medical Examiners, the Police Commissioner of Baltimore City and the State's Attorney of Baltimore City alleging that the statute was unconstitutional and asking for a declaratory judgment that naturopathy "is a separate and distinct branch of the healing arts and sciences and not included in the practice of medicine", as well as injunctive relief preventing the State from instituting criminal proceedings. *Id.* at 353, 76 A.2d at 583. Hitchcock's complaint averred that the Attorney General of Maryland issued opinions explaining that naturopathy was not recognized by the State of Maryland and that those

---

[11] "Naturopathy excludes drugs, vaccines, anti-toxins, serums, radio-activity, medicines and surgery in its treatment of diseases. It uses air, sunshine, light, heat, cold, climate, earths, water, electricity, vibrations, exercise, rest, manipulations, health foods, herbs, external applications, mental hygiene, and other enumerated principles." *Hitchcock*, 196 Md. at 353, 76 A.2d at 583.

practicing naturopathy are violating the statute and thus subject to criminal prosecution. The State Board of Medical Examiners, based upon the opinions of the Attorney General, contended that naturopathy was a practice of medicine and surgery and, therefore, that the State was preparing to prosecute Hitchcock for the unlawful practice of medicine under the statute. We relied on *Hammond* and determined that there was no justiciable controversy, because Hitchcock did not "allege that he ha[d] been ordered to discontinue the practice of naturopathy", and there was "no threat of interference by the Board of Medical Examiners, by the Police Commissioner and State's Attorney of Baltimore City" which appeared "beyond that implied by the existence of the law and the opinions delivered by the Attorney General of Maryland." *Id.* at 356, 76 A.2d at 584. We reiterated that the mere existence of a criminal statute did not present a threat sufficient to establish a justiciable controversy.

*WAAM, Inc. v. Ober*, 199 Md. at 208, 86 A.2d at 402, although addressing the issue of a litigant's standing, is also instructive. In *WAAM, Inc.*, we affirmed the trial court's dismissal of a declaratory judgment action when the plaintiff had not been prosecuted nor threatened with prosecution under an ordinance criminalizing advertising on Sundays. WAAM, Inc., a television broadcasting corporation, alleged that an ordinance that prohibited advertising on Sundays was unconstitutional and that the Police Commissioner of Baltimore City was unlawfully interfering with its business by threatening to arrest one of its customers, who refused to honor its contract. We noted that the plaintiff itself was "not threatened with arrest, and the person threatened [was] not a party to the proceeding." *Id.* at 206, 86 A.2d at 401. We reiterated that "[t]he general rule is that equity will not interfere to prevent the enforcement of a criminal statute, even though unconstitutional."

16

*Id.* at 205, 86 A.2d at 401. We noted that there is an exception to that rule, "where the threatened prosecution affects property rights and will result in irreparable injury" but determined that there was no showing of either. *Id.*

We determine, based upon our jurisprudence, that the instant declaratory judgment action is not ripe, because G & C Gulf has not alleged nor proven that it has been prosecuted under the statute nor, in actuality, threatened with prosecution.[12] With respect to the threat of prosecution, in *Hammond*, we stated "[t]he mere existence of a criminal statute is not such a threat as to present a justiciable controversy." 194 Md. at 474, 71 A.2d at 479. "'A hypothetical threat is not enough.'" *Id.* at 473, 71 A.2d at 479, quoting *United Public Workers*, 330 U.S. at 90, 67 S.Ct. at 564, 91 L.Ed. 754. In fact, in G & C Gulf's response to interrogatories, it demonstrated that it had continued with its normal course of business of towing out-of-state vehicles without any threat of enforcement. Nor does G & C Gulf allege that any threatened prosecution affects their property rights and will result in irreparable injury.

The purported threat in this case, according to G & C Gulf and the circuit court ruling, rather, was evoked when the Assistant County Attorney proffered that "we are enforcing [the statute] now because it is the law", and answered in the affirmative the judge's question as to whether the Assistant County Attorney was "ready to charge and

---

[12] G & C Gulf relies on *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed. 2d 604 (2007), and *Governor of Maryland v. Exxon Corp.*, 279 Md. 410, 414, 370 A.2d 1102 (1977), *aff'd*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed. 2d 91 (1978), to support its contention that a threat of prosecution is not necessary to make a pre-enforcement challenge of a criminal statute. Both cases are inapposite to the instant case as neither involved a penal statute.

prosecute or at least take to the Commissioner's Office the Plaintiff". The judge found that the Assistant County Attorney's affirmative response constituted a judicial admission. "'A judicial admission is an express waiver made in court or before trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact. The party with the burden of proof is, therefore, relieved of that burden and the fact is deemed proved.'" *Bellamy v. State*, 403 Md. 308, 327 n.19, 941 A.2d 1107, 1118 n.19 (2008), quoting 2 Wharton's Criminal Evidence § 6:16 (15th ed. 2001).

The affirmative answer of the Assistant County Attorney to the question proffered by the judge, though, cannot constitute a credible threat of enforcement, because, for the purported threat to constitute a threat of prosecution for purposes of ripeness, it must be specific to the litigant. *See Hammond*, 194 Md. at 473-74, 71 A.2d at 478. Specific has been defined as, "[o]f, relating to, or designating a particular or defined thing; explicit." Black's Law Dictionary 1616 (10th ed. 2014). In this case the Assistant County Attorney did not specifically utter a threat of enforcement towards the litigant, G & C Gulf. She merely affirmed that the County would enforce the statute because it is the law. Furthermore, G & C Gulf did not aver that it had violated the statute or that it intended to violate the statute. The purported threat, therefore, does not constitute a credible threat of enforcement.

Accordingly, the present controversy is not justiciable.

> **CERTIFIED QUESTION ANSWERED AS SET FORTH HEREIN. CASE REMANDED TO COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASE TO THE**

18

**CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR DISMISSAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

19